STATE of Wisconsin,
Plaintiff-Appellant,

v.

Dhosi J. NDINA,
Defendant-Respondent.†

Court of Appeals

*No. 2007AP5–CR. Submitted on briefs September 4, 2007.
—Decided November 20, 2007.*

2007 WI App 268

(Also reported in 743 N.W.2d 722.)

† Petition to review granted 5/13/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general and *Daniel J. O'Brien*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard L. Kaiser* of *Law Offices of Richard L. Kaiser*, of Milwaukee.

Before Wedemeyer, Fine and Kessler, JJ.

¶ 1. WEDEMEYER, J. The State appeals from an order reversing the judgment and ordering a new trial for Dhosi J. Ndina after a jury found him guilty of first-degree recklessly endangering safety. The State argues that because Ndina failed to object when the trial court removed disruptive family members from

the courtroom, his claim of violation of his Sixth Amendment right to a public trial should have been reviewed in the context of ineffective assistance of counsel. We conclude that Ndina's failure to object during his trial when the court ordered family members out of the courtroom requires this court to review his Sixth Amendment public trial violation claim only in the context of ineffective assistance of counsel. Because Ndina failed to establish ineffective assistance of counsel, we reverse the order of the trial court, reinstate the judgment rendered by the jury, and remand this matter to the circuit court for any additional postconviction proceedings required by law.

## BACKGROUND

¶ 2. Ndina was charged with attempting to kill his nephew, Erjon Dhembi, at a family gathering which took place on November 24, 2002. Erjon was stabbed in the back. Ndina entered a not guilty plea and the case was tried to a jury in May 2005. During the trial, the court entered a sequestration order for witnesses who were scheduled to testify.

¶ 3. The State presented testimony from the victim's sister, Eglantina Dhembi, who stated that she saw Ndina stab her brother. The victim, Erjon, testified that he was confronted by Ndina and Ndina's brother, Ilia. While Erjon argued with Ilia, Ndina stabbed Erjon twice from behind. Erjon did not see a knife, but was sure Ndina was the one who stabbed him in the back. Erjon's father, Spiro Dhembi, also testified that he saw Ndina stab his son in the back. During this testimony, there was a disturbance in the courtroom involving Ndina's family members. The trial court instructed the individuals to remain silent.

711

¶ 4. The next afternoon, which was the fourth day of trial, May 12th, there was another disturbance in the courtroom involving Ndina's family members. The trial court noted that family members were walking in and out during testimony and disrupting the process. The trial court then ordered the exclusion of all family members from the courtroom, with the exception of Ndina's mother. The trial court expressed concern that the family members were disturbing the process, violating the sequestration order and disobeying the order of the court by discussing the case with each other. Ndina did not object to the trial court's order excluding his family members or dispute the court's observations.

¶ 5. On the following day, the trial court noted that it had observed Ndina's family members:

> [B]oth male and female who have joined [Ndina's mother] in the gallery over the course of the last five days, discussing matters as witnesses were on the stand, often times in a very animated and elevated fashion. I simply cannot turn a blind eye to that and expect that my sequestration order was understood by those parties.

The trial court reasoned that such conduct "made it inappropriate for [these family members] to remain in my courtroom." The trial court also described the conversations the family was engaging in as "not only animated with facial gestures nodding in approval or disapproval of witnesses' testimony, in full view of the jury . . . they became loud, loud enough such that other members of my staff, as well as the parties, could hear it." On May 18, 2005, family members were allowed back into the courtroom for jury instructions and closing arguments.

¶ 6. The defense theory was that Ndina was present at the family gathering, but was not the one

who stabbed Erjon. The jury returned a guilty verdict on the lesser-included offense of first-degree recklessly endangering safety. Ndina was sentenced on July 22, 2005, to a term of five years in prison followed by two years of extended supervision. Judgment was entered on July 25, 2005. The Honorable Mary M. Kuhnmuench presided over the trial and sentencing proceedings.

¶ 7. Ndina filed a postconviction motion alleging, among other things that the trial court violated his Sixth Amendment right to a public trial when it excluded several family members from part of the trial. Due to judicial rotation, the Honorable Dennis P. Moroney presided over the hearing on the motion. After considering the written submissions and oral arguments by the parties, the trial court issued an order granting Ndina's motion for a new trial, ruling that Ndina's public trial right was violated. The trial court did not reach the issue of ineffective assistance of counsel because it had already ruled in favor of Ndina on the merits. The State appeals from this order.

## DISCUSSION

¶ 8. The State contends that the trial court erred in granting the motion without considering the issue within the context of an ineffective assistance of counsel claim. It proffers that because Ndina's counsel failed to object, he waived review on the merits of the issue and thus, the trial court should have considered the issue only in the context of whether Ndina can establish that counsel provided ineffective assistance by failing to object to the removal of his family members from the courtroom. Ndina responded that the State waived this argument, and that when a Sixth Amendment right to a public trial has been violated, the defendant is not required to show prejudice.

713

¶ 9. Ndina is correct in stating that generally when a Sixth Amendment right to a public trial has been violated, the defendant is not required to show prejudice. *Waller v. Georgia*, 467 U.S. 39, 49–50 (1984). The Sixth Amendment right to a public trial is a fundamental right protected by the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment. U.S. Const. amend. VI; *Duncan v. Louisiana*, 391 U.S. 145, 148–49 (1968). The Wisconsin Constitution also guarantees the right to a public trial. Wis. Const. art. I, § 7 ("In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial . . . .").

¶ 10. The right to a public trial is a basic tenet of our judicial system, promotes justice, prevents perjury, encourages witnesses to come forward and preserves the integrity of the judicial system. *Walton v. Briley*, 361 F.3d 431, 432–33 (7th Cir. 2004); *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966).

¶ 11. In order to assert a violation of the constitutional right to a public trial, however, a defendant must object at the time the violation occurs. *State v. Huebner*, 2000 WI 59, ¶¶ 10–11, 235 Wis. 2d 486, 611 N.W.2d 727 (failure to make an objection during trial at the time the error occurs generally precludes appellate review of a claim). Here, it is undisputed that there was no objection from the defense, when the trial court ordered Ndina's family members out of the courtroom. Thus, we agree that Ndina's right to raise the merits of this issue on appeal was waived. *Levine v. United States*, 362 U.S. 610, 619 (1960) (constitutional rights are waived or forfeited by a defendant's or attorney's failure to object when the constitutional violation occurred); *State v. Agnello*, 226 Wis. 2d 164, 172–73, 593 N.W.2d 427 (1999); *see also*

*United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 2083 (2007); *Roque v. Phillips*, No. 04–CV-4337, 2007 WL 777764, at *7 (E.D.N.Y. Mar. 12, 2007); *State v. Drummond*, 854 N.E.2d 1038, 1055–56 (Ohio 2006); *Jones v. State*, 883 So. 2d 369, 371–72 (Fla. Dist. Ct. App. 2004); *People v. Hayden*, 788 N.E.2d 106, 113–14 (Ill. App. Ct. 2003); *People v. Brown*, 717 N.Y.S.2d 177, 177–78 (App. Div. 2000); *State v. Butterfield*, 784 P.2d 153, 156–57 (Utah 1989); *but see Walton*, 361 F.3d at 433 (courthouse closed and public was thereby prevented from attending trial; exclusion of disruptive spectators not involved).

¶ 12. The purpose for the waiver rule has been often stated. A timely objection enables the trial court to avoid or correct any error with minimal disruption of the judicial process. *State v. Boshcka*, 178 Wis. 2d 628, 643, 496 N.W.2d 627 (Ct. App. 1992). Here, neither Ndina nor his defense counsel raised any objection to the trial court's decision to remove several family members from the courtroom after the family members continued to cause disruption despite the trial court's warnings. Thus, under such circumstances, the only context within which Ndina's claim can be considered is whether his trial counsel provided ineffective assistance by failing to object to the trial court's removal of his family from the courtroom for part of the trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (unobjected to error must be analyzed under ineffective assistance of counsel standards, even when error is of constitutional dimension).

¶ 13. In evaluating an ineffective assistance claim, we review whether the defendant has proven two things: (1) that his or her lawyer's performance was

deficient; and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). A lawyer's performance is not deficient unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Even if a defendant can show that his or her counsel's performance was deficient, he or she is not entitled to relief unless he or she can also prove prejudice; that is, he or she must demonstrate that his or her counsel's errors "were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." *Id.* Stated another way, to satisfy the prejudice-prong, " '[a] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Sanchez*, 201 Wis. 2d at 236 (citation omitted).

¶ 14. In assessing the defendant's claim, we need not address both the deficient performance and prejudice components if he or she cannot make a sufficient showing on one. *See Strickland*, 466 U.S. at 697. The issues of performance and prejudice present mixed questions of fact and law. *See Sanchez*, 201 Wis. 2d at 236. Findings of historical fact will not be upset unless they are clearly erroneous, *see id.*, and the questions of whether counsel's performance was deficient or prejudicial are legal issues we review independently. *See id.* at 236–37.

¶ 15. Moreover, if an appellant wishes to have an evidentiary hearing on an ineffective assistance of counsel claim, he or she may not rely on conclusory allega-

tions. If the claim is conclusory in nature, or if the record conclusively shows the appellant is not entitled to relief, the trial court may deny the motion without an evidentiary hearing. *State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50 (1996). To obtain an evidentiary hearing on the ineffective assistance of counsel claim, the appellant must allege with specificity both deficient performance and prejudice in the postconviction motion. *Id.* at 313–18. Whether the motion sufficiently alleges facts which, if true, would entitle the appellant to relief is a question of law to be reviewed independently by this court. *Id.* at 310. If the trial court refuses to hold a hearing based on its finding that the record as a whole conclusively demonstrates that the defendant is not entitled to relief, our review of this "determination is limited to whether the court erroneously exercised its discretion in making this determination." *Id.* at 318.

¶ 16. Here, there was no evidentiary hearing. Instead, trial counsel submitted an affidavit insisting there were no strategic reasons for his failure to object. In other words, trial counsel concedes that failure to object in these circumstances constituted deficient performance. Thus, the only issue for this court's consideration is whether the failure to object resulted in prejudice to Ndina.

¶ 17. The parties dispute the issue of prejudice. The State contends that Ndina must prove a reasonable probability of a different outcome in order to establish that he was prejudiced. Ndina argues that the State's definition of prejudice is much too broad. Instead, Ndina contends that even in the context of ineffective assistance, prejudice should be presumed as it would be impossible to prove actual prejudice. Ndina focuses his argument on the standard that prejudice results when the trial is unreliable "or the proceeding[s are] funda-

mentally unfair." *State v. Fritz*, 212 Wis. 2d 284, 296, 569 N.W.2d 48 (Ct. App. 1997).

¶ 18. For reasons already addressed and further discussed below, we are not convinced that prejudice should be presumed. Aside from that, applying the prejudice standards referenced by the parties in this case result in the same conclusion: Ndina has failed to prove he was prejudiced by counsel's failure to object to the removal of his family from the courtroom for part of the trial.

¶ 19. Had counsel objected and raised the public trial challenge, there is no reason to believe that it would have changed the circumstances such that reasonable doubt would have been created in the minds of the jurors. The exclusion order was made outside the presence of the jury. Thus, there is no evidence that the jury even knew that Ndina's family had been removed from the proceedings. Ndina does not present anything to show that having the disruptive family members in the courtroom would have had any effect on the verdict. As it turned out, the jury convicted Ndina on a lesser-included offense rather than the greater offense with which he was charged. Based on the record created by the trial court, the family members were removed from the courtroom only after repeatedly disrupting the ability of the court to properly conduct the trial. By eliminating the disturbances, the trial court helped ensure that the jury returned a careful and reliable verdict.

¶ 20. As to whether the proceedings were "fair," we are convinced that was the case. The trial court did not "close" the courtroom in the sense that the public was not permitted to enter. The trial court gave several warnings in an attempt to maintain the fairness and integrity of the result in this case. It is not unreasonable for a court

to expect those in the gallery, family or not, to remain quiet during testimony so that the jury can remain attentive to the evidence rather than people in the gallery. Accordingly, we conclude that Ndina has not established that he was prejudiced by counsel's failure to object to the trial court's decision to exclude family members from part of the trial.[1]

¶ 21. The key distinction as to the issue in this case is that when a defendant makes a timely objection at trial raising a public trial challenge, a defendant receives the benefit of automatic reversal without having to prove prejudice if the public trial violation is proven. *Smith v. Hollins*, 448 F.3d 533, 536–37 (2d Cir. 2006); however, if a defendant fails to make a timely

---

[1] The circumstances in this case are unusual in that at the time the exclusion order was issued, no one viewed this case as infringing on Ndina's Sixth Amendment right to a public trial. Rather, the decision was viewed as a logical consequence for the impropriety of the family members who could not behave in the courtroom. As such, the considerations set forth in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) were not addressed. The *Press-Enterprise Co.* test is: "A party seeking to bar the court's doors to the public must satisfy a four-part test: (1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure." *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004). Had defense counsel timely objected at the time of the exclusion order and raised the Sixth Amendment public trial right, the *Press-Enterprise Co.* factors would have had to be reviewed. Based on our disposition, however, it is not necessary for us to address these factors. And, significantly, this case does not involve barring *all* members of the public, *see State v. Vanness*, 2007 WI App 195, 304 Wis. 2d 692, 738 N.W.2d 154.

objection at trial on a public trial challenge, then the ·
issue can only be reviewed in the context of ineffective
assistance and prejudice must be established. *Purvis v.
Crosby*, 451 F.3d 734, 738–39 (11th Cir.), *cert. denied,*
127 S. Ct. 587 (2006).

¶ 22. To conclude otherwise would result in poten-
tial improper manipulation of the justice system by
encouraging defense counsel to not object so as to ensure
automatic reversal on appeal. The Utah Supreme Court
aptly addressed this very issue in *Butterfield*:

> Butterfield challenges the applicability of the prejudice
> component of an ineffective assistance of counsel claim
> to his case. Under our decision in *State v. Crowley*, 766
> P.2d 1069 (Utah 1988) where an objection to a closure
> order is made at trial, we presume prejudice from an
> improper closure and will order a new trial. 766 P.2d at
> 1071–72. Therefore, it is argued, there is no need for
> one's claiming ineffective assistance of counsel to dem-
> onstrate prejudice when a trial is improperly closed.
>
> There is no merit to this position. The question
> before us is what the requirements should be for a
> showing of ineffective assistance of counsel when there
> is no objection to a closure, not whether prejudice must
> be shown when a proper objection has been made at
> trial. We decline to do away with the requirement of a
> showing of prejudice for an ineffective assistance of
> counsel claim. Were we to hold otherwise, defense coun-
> sel could freely refrain from objecting to an improper
> closure order and then, if the verdict is adverse, raise the
> issue on appeal for the first time under the rubric of an
> ineffective assistance of counsel claim. Absent a preju-
> dice requirement, a retrial would be automatic. We
> decline to adopt a rule that would encourage such
> manipulation.

*Butterfield*, 784 P.2d at 157. We agree with the analysis
set forth by the *Butterfield* court. The same reasoning

720

applies to the courts in this State. If we were to conclude that Ndina is automatically entitled to a new trial without showing prejudice, we would be setting a dangerous precedent—one that would encourage defense counsel to forgo objecting to any public trial closures, and waiting to see if the verdict is adverse. Then, if the defendant is convicted, the public trial issue could be raised for the first time postconviction, and new trials granted without any proof of prejudice. Such a result runs contrary not only to fundamental principles of justice, but would result in a substantial burden on judicial resources.

¶ 23.　Accordingly, because Ndina failed to make a public trial objection at the time the alleged violation occurred, he is limited to appellate review on this claim under the ineffective assistance of counsel claim. Because he has not demonstrated that counsel's failure to object caused him prejudice, his claim fails.[2]

## CONCLUSION

¶ 24.　Based on the foregoing, we conclude that the postconviction court erred in reversing the judgment and ordering a new trial. We reverse the postconviction order, reinstate the judgment rendered by the

---

[2] After submission of this case, the State filed a letter with this court citing additional authority and Ndina filed a letter in response to the State's letter. We acknowledge the submission. This court was aware of the authorities submitted, in particular, the *Vanness*, 2007 WI App 195. *Vanness* is not relevant to the instant case as it involved a different set of facts than the case before us. In *Vanness*, defense counsel objected to the locking of the courthouse doors, so as to prevent public access. As noted above, Ndina neither objected, nor did his case involve exclusion of the public. Thus, *Vanness* is not pertinent to this appeal.

jury and remand the matter for any additional postconviction proceedings required by law.

*By the Court.*—Order reversed; judgment reinstated, and cause remanded.