[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
† Petition to Review filed.
¶ 1 Roger Thorp appeals a judgment, entered upon a jury's verdict, convicting him of arson, contrary to WIS. STAT. § 943.02(1)(a).[1]
Thorp also challenges the denial of his motion for postconviction relief. Thorp argues he was deprived of his due process rights when the trial court failed to conduct an evidentiary hearing on his competency to stand trial. Thorp also contends the trial court erroneously exercised its discretion by denying his postconviction motion without a hearing. We reject Thorp's arguments and affirm the judgment and order.
 BACKGROUND ¶ 2 An Information charged Thorp with arson. When the issue of Thorp's competency was raised, the court ordered both a competency and NGI evaluation and ultimately received reports from Dr. Donna Minter and Dr. John Laney. Although both experts opined that Thorp was competent to proceed to trial, Laney noted that Thorp had a mental disease and defect — specifically, a significant memory impairment stemming from years of alcohol abuse and dependence — that "could impair his ability to assist in his defense." Laney concluded, however, that "[w]ith regard to mental responsibility, his mental disease and defect would not impair his capacity to either appreciate the wrongfulness of the alleged conduct or conform his conduct to the requirements of the law." At the competency hearing, no additional evidence was presented. The court recounted the experts' respective opinions that Thorp was competent to proceed, and confirmed the upcoming trial date.
 ¶ 3 At trial, Margaret Thorp testified she and Thorp were married for twenty-eight years and had lived at the subject residence in Birchwood for approximately five years. The couple listed the home for sale in May 2006 and in July, Thorp moved into a group home located in Rice Lake. Margaret testified that without her knowledge, Thorp filed for divorce on September 15, 2006. At some time before midnight that night, Margaret heard what sounded like a "tinkling of glass" from the area of the living room. When she went to investigate, she detected smoke and discovered fire engulfing the door leading into the house from the south porch. After unsuccessfully attempting to both operate a fire extinguisher and call 911, Margaret drove to a neighbor's house for help. Margaret testified that she lost a number of irreplaceable items and antiques in the fire, while many of Thorp's belongings had earlier been moved out of the house. Margaret denied telling Thorp's sister, Pam Thorp, that she had a plan to put Thorp in jail for the rest of his life. Margaret further denied telling Thorp's family she hoped he would die so she could get his assets.
 ¶ 4 A Sheriff's Department investigator testified he arrived on the scene and attempted to contact Thorp. The investigator learned from the Rice Lake group home that Thorp had been released for a two-day visit to his mother's home. Thorp's mother, Pauline Thorp, lived in Spooner, approximately twenty miles from the scene of the fire. Investigators proceeded to Pauline's house, arriving at 4 a.m. Pauline informed the officers that she and Thorp had taken the car for a drive about ten hours earlier, at approximately 6 p.m. When the officers investigated the garage, however, they noticed the car was warm. In fact, when the hood was open, heat from the engine could be felt from six feet away and the engine block was hot to the touch. When the officers later entered the room where Thorp was sleeping, they smelled a strong odor of gasoline. According to the investigator, Thorp initially indicated he had not left the residence since the drive with his mother at approximately 6 p.m. When asked about the engine's heat, however, Thorp stated he went for a drive around Spooner after his mother went to bed at approximately 9:30 p.m.
 ¶ 5 Pauline testified she went to bed at approximately 10:30 p.m. Although not reflected in the officers' reports, and refuted by their testimony, Pauline claimed she told the officers she checked on Thorp every hour and saw him having a snack in the kitchen at approximately midnight. In turn, Pam testified about conversations she had with Margaret in which Margaret allegedly stated she wanted Thorp "gone for good," in jail for the rest of his life. According to Pam, Margaret indicated she was going to get everything and when asked why she did not file for a divorce, Margaret allegedly stated "because everything is mine." Margaret also apparently stated she had "a plan." Finally, a forensic scientist opined that an accelerant had been used to ignite the fire, as gasoline was found on samples of wood taken from the residence. Gasoline was also found on Thorp's seized clothes, as well as a sample of the driver's side car seat.
 ¶ 6 A jury found Thorp guilty of the crime charged and the court imposed a fifteen-year sentence consisting of ten years' initial confinement and five years' extended supervision. The court denied Thorp's motion for postconviction relief without a hearing and this appeal follows.
 DISCUSSION ¶ 7 Thorp argues he was deprived of his due process rights when the trial court failed to conduct an evidentiary hearing on his competency to stand trial. WISCONSIN STAT. § 971.14(4)(b) provides, in pertinent part: "If the district attorney, the defendant and defense counsel waive their respective opportunities to present other evidence on the issue, the court shall promptly determine the defendant's competency. In the absence of these waivers, the court shall hold an evidentiary hearing on the issue."
 ¶ 8 As noted above, the court ordered competency evaluations and two experts submitted reports opining Thorp was competent to proceed to trial. At the competency hearing, the judge recounted the experts' respective opinions and defense counsel neither objected to the conclusions nor asked to produce additional evidence on the matter. The court implicitly found Thorp competent to stand trial and then confirmed the upcoming trial date.
 ¶ 9 By failing to object to the competency proceedings, Thorp forfeited any challenge to those proceedings. See State v. Huebner,2000 WI 59, ¶¶ 10-11, 235 Wis. 2d 486, 611 N.W.2d 727 (failure to object at time alleged error occurs generally precludes appellate review of claimed error). This rule applies to claims of both constitutional and non-constitutional error. See, e.g., State v. Ndina, 2007 WI App 268, ¶ 11, 306 Wis. 2d 706, 743 N.W.2d 722. Further, to the extent Thorp claims his personal waiver was required, our supreme court has held that a competency hearing may be waived by a defendant's counsel without the affirmative personal assent of the defendant. State v. Guck,176 Wis. 2d 845, 853, 500 N.W.2d 910 (1993). Although Thorp suggestsGuck was "wrongly decided," our supreme court "is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 256
(1997).
 ¶ 10 Next, Thorp argues the trial court erroneously exercised its discretion when it denied his postconviction motion without a hearing. We are not persuaded. Thorp sought postconviction relief on grounds he was denied the effective assistance of trial counsel. A defendant who alleges ineffective assistance of counsel is not automatically entitled to an evidentiary hearing. To obtain an evidentiary hearing, the defendant's motion must allege, with specificity, both that counsel provided deficient performance and that the deficiency was prejudicial. State v.Bentley, 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996). If the motion alleges facts that entitle the defendant to relief, the trial court must hold an evidentiary hearing. Id. at 310. Whether a motion alleges facts that, if true, would entitle a defendant to relief is a question of law that we review independently. Id.
 ¶ 11 However, if the factual allegations of the motion are insufficient or conclusory, or if the record irrefutably demonstrates that the defendant is not entitled to relief, the trial court may, in its discretion, deny the motion without a hearing. Id. at 309-10. When reviewing a court's discretionary act, this court utilizes the deferential erroneous exercise of discretion standard. Id. at 310-11.
 ¶ 12 The analytical framework for assessing an ineffective assistance of counsel claim is well known. To sustain a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, and that counsel's errors were prejudicial.Strickland v. Washington, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. See id. at 697.
 ¶ 13 To establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. However, "every effort is made to avoid determinations of ineffectiveness based on hindsight . . . and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845
(1990). In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. Strickland, 466 U.S. at 690.
 ¶ 14 With respect to the prejudice component of the test, the defendant must affirmatively prove that the alleged defect in counsel's performance actually had an adverse effect on the defense. See id.
at 693. The defendant cannot meet this burden by merely showing that the error had some conceivable effect on the outcome. Rather, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 ¶ 15 Here, Thorp claimed his trial counsel was ineffective for failing to insist on an evidentiary hearing to determine Thorp's competency. Thorp's postconviction motion, however, failed to establish what evidence he would have presented at a hearing to alter the determination regarding his competency. The motion alleged no facts that, if true, would have contradicted the experts' opinions regarding his competency. The motion therefore failed to establish how Thorp was prejudiced by any deficiency on the part of his trial counsel for failing to request a hearing or otherwise object to the manner by which the court determined Thorp competent to proceed.
 ¶ 16 Next, Thorp claims counsel was ineffective for failing to investigate and present certain witnesses at trial. Emphasizing that the State used evidence of the engine's warmth to place Thorp in the vehicle at a time consistent with the start time of the fire, the postconviction motion claimed counsel was ineffective for failing to present a mechanic who could have explained "why the vehicle would have been so warm nearly ten hours after the vehicle was last operated" at approximately 6 to 7 p.m. Thorp's own statement to police, however, was that he drove the vehicle after 9:30 p.m. The motion therefore failed to establish how counsel was deficient for failing to pursue this testimony or how Thorp was prejudiced by its absence.
 ¶ 17 Thorp also contends counsel was ineffective for failing to present evidence of Thorp's physical condition. Thorp claimed his physical ailments would have hindered his ability to carry a gas can down the 300-foot driveway. At trial, Margaret testified she did not see or hear a car coming up the driveway. That Margaret neither heard nor saw a car, however, does not preclude the possibility that a car made it up the driveway without her knowledge. At any rate, Margaret confirmed Thorp had arthritis and sometimes had difficulty walking, and defense counsel emphasized Thorp's limp to the jury during closing arguments. Even assuming counsel was somehow deficient for failing to introduce medical records evincing Thorp's physical ailments, we are not persuaded these records would have changed the outcome, especially in light of the other evidence of Thorp's guilt.
 ¶ 18 Thorp additionally claims counsel was ineffective for failing to interview Roxanne Hanrahan, Margaret's sister-in-law. According to an affidavit attached to the motion, Hanrahan would have testified that Margaret "desperately wanted to get rid of the house" and wondered how she would do so given the economy and the impending winter. Because the house was for sale, there is nothing inherently ominous in Margaret's alleged statement about her desire to "get rid of" it. Hanrahan further averred that contrary to Margaret's trial testimony, she told Hanrahan that she knew Thorp would be staying at his mother's house the weekend of the fire. Again, given the evidence of Thorp's guilt, we are not persuaded that this apparent challenge to Margaret's credibility would have changed the outcome at trial. Therefore, even assuming counsel was somehow deficient for failing to interview Hanrahan, Thorp fails to establish how he was prejudiced by this claimed deficiency.
 ¶ 19 Finally, attached to the postconviction motion are affidavits from both Pauline and Pam regarding counsel's alleged failure to properly prepare them to testify at trial. Thorp fails to establish prejudice, however, as neither the affidavits nor the postconviction motion show how additional preparation would have altered the outcome. Further, that the jury did not believe Pauline's alibi testimony is not enough to demonstrate ineffective assistance of trial counsel. See State v.Robinson, 177 Wis. 2d 46, 58, 501 N.W.2d 831 (Ct.App. 1993). "Effective representation is not to be equated with a not guilty verdict." Id.
 ¶ 20 Because the postconviction motion failed to allege facts that, if proven, would establish counsel was ineffective, Thorp was not entitled to an evidentiary hearing and the circuit court properly denied the motion.See Bentley, 201 Wis. 2d at 313-18.
By the Court. — Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.
[1] All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.