COURT OF APPEALS
DECISION
DATED AND FILED

January 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1084**

STATE OF WISCONSIN

Cir. Ct. No. **2020TP49**

IN COURT OF APPEALS
DISTRICT II

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **K.S.**, A PERSON UNDER THE AGE OF **18**:

N.D.,

PETITIONER-RESPONDENT,

V.

E.S.,

RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed.*

¶1     GROGAN, J.[1] E.S. (Ed)[2] appeals from an order terminating his parental rights to his daughter, K.S. (Kim), following a jury's determination that he abandoned her and the trial court's finding that termination of Ed's parental rights was in Kim's best interest.  Ed also appeals from a postdisposition order denying his request for a new trial in which he alleged trial counsel provided ineffective assistance.  Ed argues that:  (1) his trial counsel provided ineffective assistance by failing to object to N.D.'s (Nancy) rebuttal testimony about his purported heroin use; (2) his trial counsel provided ineffective assistance by failing to object to opposing counsel's closing argument referring to his purported heroin use; and (3) the postdisposition court's finding that the heroin references were not prejudicial is erroneous.  This court affirms.

## I. BACKGROUND

¶2     Nancy and Ed were in a relationship and had a nonmarital child together in June 2009.  However, about a year later, the two broke up and, after a few disputes in family court, settled on joint custody with equal placement.  When Nancy learned that Ed might be abusing illegal drugs and alcohol, she sought modification of the equal placement order.  A hearing occurred on September 20, 2016.  Ed failed to attend the hearing, and the family court found him in default and issued an order in October 2016 granting Nancy's request for modification.[3]

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Pseudonyms will be used in place of initials for readability.

[3] At the grounds hearing, Ed testified that he missed the September 2016 hearing because he had been in Florida caring for his mother who had cancer and that he did not make it back to Wisconsin in time to attend.  Ed introduced a letter the family court received on September 20, 2016, that requested the court reschedule the hearing based on his circumstances.

The order, which referenced a custody study and the guardian ad litem's (GAL) recommendation, placed the child with Nancy and gave Ed supervised visitation every Wednesday night for two hours. The order directed that: "After six months of regular Wednesday evening visits as set forth above, [Ed] shall have additional periods of placement every Saturday from 10 a.m. to 4 p.m. with a mutually agreed upon supervisor who shall also provide transportation." That never occurred. The last time Ed exercised his Wednesday visitation was in May 2017, and the last contact Ed had with his daughter was in June 2017.[4]

¶3      In December 2020, relying on WIS. STAT. § 48.415(1)(a)3,[5] Nancy filed a petition seeking to terminate Ed's parental rights to their daughter on abandonment grounds, alleging he failed to have contact with her for over six months. Ed contested the petition. The grounds trial occurred in October 2021. At the trial, Nancy presented testimony from multiple witnesses, including two maternal aunts, the maternal grandmother, Kim's maternal half-brother, her husband, and herself. These witnesses confirmed that to their respective knowledge, Ed had not seen or contacted Kim since June 2017 and that they were not aware of Ed having come to the home or to any of Kim's school functions or of Ed having called or sent letters. Ed's counsel cross-examined each of these

---

[4] Ed testified he sent mail or an email to his daughter in July 2017 when he was in the Walworth County jail and that he was at Nancy's house in the Summer of 2018. Even if the jury accepted Ed's testimony in this regard, it is not significant because the abandonment period is six months, and Nancy filed the petition in late December 2020.

[5] WISCONSIN STAT. § 48.415(1)(a)3 provides that abandonment, which is a ground for termination of parental rights, can by established by showing that: "The child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer."

witnesses with questions that suggested Nancy prevented Ed from exercising his visitation.

¶4 During her testimony, Nancy confirmed that she did not invite Ed when she hosted holiday or birthday parties. Nancy also testified that she has lived in the same home since March 2016 and that Ed knew her address. She also testified that she had the same phone number and introduced her phone records from April 2017 to March 2021 to show that Ed had not contacted her during that time period.

¶5 Ed's defense to Nancy's claim that he abandoned Kim was to show that he had "good cause" for his failure to visit or communicate with his child. WISCONSIN STAT. § 48.415(1)(c)1-2 excuses a parent's lack of contact with the child if the absent parent demonstrates he "had good cause for having failed to visit [or communicate] with the child throughout the time period[.]" As a result of the defense's "good cause" line of questioning, Nancy's lawyer argued that Ed had opened the door to introduce testimony about Ed's purported illegal drug use. Specifically, Nancy argued that because Ed's defense theory left the jury with the impression that Nancy was the reason Ed could not contact or visit his daughter, Nancy should be able to introduce evidence refuting Ed's defense. The trial court agreed that Ed's defense theory suggested to the jury that Ed's good cause for not having contact with his daughter was that Nancy prevented it. The court found that, based on the defense theory, Nancy:

> is entitled to put in why she may have been reluctant or even to some extent unwilling to initiate contact. The defense in this case seems to be you didn't call him, you didn't contact him, you didn't tell him about parties, you didn't invite him. Okay, I think that [Nancy] has the ability to respond to that, because again, if she doesn't, it will appear as if she just purposefully excluded him. So her motivation for excluding him is a fact I think relevant, and I

4

am going to permit limited testimony as to what happened as far as the conclusion goes. But I don't want counsel getting into specifics.

¶6 The trial court then discussed exactly what information could come in. Nancy's lawyer explained she wanted to ask Nancy about whether a custody study was done as a part of the 2016 order and about the GAL's recommendation, and she also wanted Nancy to be allowed to indicate, when asked about the reasons for the 2016 change in placement order, that it was at least in part because she believed Ed was using drugs. Nancy then testified about the 2016 order. Namely, she confirmed that Ed did not attend the 2016 hearing, that a custody study was done that indicated "concerns for [Kim's] safety while she was in [Ed's] placement[,]" and that the reason for the 2016 order was because Ed's home "wasn't a safe place for" Kim—"there was lot of concerns for her wellbeing while she was in his placement."

¶7 The defense only called Ed as a witness. He testified about problems he had with Nancy regarding the Wednesday visitations. Specifically, he recalled Nancy failing to bring Kim to a magic show he bought tickets for and her unwillingness to be flexible with his schedule. Ed's counsel said, "what you're saying is that [Nancy] wouldn't allow you to have your placements after" June 2017 and then asked if Ed returned to family court to complain about Nancy's refusal to give him placements. Ed said he did not go back to court to complain. He said he did not have the money to return to court, and when he had gone to court before, "[i]t seemed like they just kept taking from me." Ed testified he became depressed.

¶8 After Ed's direct testimony, Nancy's lawyer argued that the defense "open[ed] up the door more" for rebuttal testimony informing the jury that Ed's

5

purported heroin use was the reason why the family court reduced Ed's placement and that information about Ed's criminal convictions should come in. The GAL agreed with Nancy's lawyer and advised the court: "As it stands right now, it seems the family court unilaterally decided to change placement with [Ed] fairly dramatically and without the jury able to hear what the bases were, it puts them at a disadvantage." The trial court reasoned that:

> So during the course of the trial, [Nancy] has been portrayed as preventing or interfering with [Ed] not allowing him to exercise his visitation. Testimony has been taken from cross-examination and from [Ed] regarding the Saturday visitations. No one really got into why Saturday visitations were refused, except some reference to the Wednesday visitations. There is testimony that [Nancy] did not welcome [Ed] to events. There is testimony that [Nancy] did not invite [Ed] to family gatherings.
>
> [Ed] has postured this case basically as indicating that [Nancy] is willfully either withholding this child or somehow preventing this child from being seen by [Ed]. I guess based on that defense, it would be relevant that [Nancy] be able to explain if she has been let's just say difficult with [Ed's] visitation why she is doing that. The family court case of 09-FA-471 in Walworth County is referenced with a custody study, but we don't have that study and we don't have the findings except that something changed after that hearing. So based on the defense that has been presented, which is the defense of good cause, [Nancy] is entitled to respond and say it's not good cause. Based on what we prior agreed to or what I ordered, she is somewhat prohibited from talking about why she didn't want [Ed] around [Kim].
>
> I also would note in jury instruction 314, part of the instruction at the end references good cause and it indicates that in determining if good cause existed and so on, the jury can consider -- and I'm kind of paraphrasing here -- whether the person with physical custody of the child prevented or interfered with efforts by the parent to visit or communicate with the child. That seems to be an argument made for good cause. I do firmly find that [Nancy] is allowed to respond to that argument.
>
> Then we go with another part which says any other factors beyond the parent's control which precluded or

6

interfered with visitation or communication. I think the opposite of that should also be allowed is any factors that are within that parent's control that caused this to happen. I do find evidence of reasons for change in the visitation are relevant in response to the good cause argument that has been made.

¶9 The trial court then found that although the requested rebuttal testimony would be prejudicial to Ed, "it's probative value based on the [good cause] defense right now outweighs the prejudicial." The court ruled that Nancy "has a right to respond to [the good cause defense] in rebuttal." Ed's lawyer insisted that the criminal convictions were not relevant, and Nancy's lawyer clarified that Nancy's concerns were not the criminal convictions—it was Ed's purported heroin problem. She indicated rebuttal testimony would be limited to that and argued this was reasonable because: "When a parent chooses heroin over their children, this court becomes involved." When the court asked whether Nancy personally observed Ed's heroin use, her counsel explained that Nancy had been given information about possible heroin use and that the family court had ordered Ed to take drug tests. When the court asked how she would get around potential hearsay issues, Nancy's lawyer responded it would depend on the defense case's witnesses. The court restated its position that "if there is a way to do it, [Nancy] can certainly indicate" her reason for any reluctance she had to having Ed being around their daughter.

¶10 When Nancy's counsel cross-examined Ed, he admitted that he was ordered to submit to drug testing, and its purpose was to test for the "[p]resence of drugs in [his] system." Ed also testified that he stopped communicating with his daughter because it was too stressful and depressing for him to be limited to the Wednesday visits after having her all the time under the prior order. He "wanted to take some time" "to figure out how to fix" it.

¶11    Nancy testified in rebuttal. She explained that she had received some concerning information from Ed's father that caused her to return to family court to reduce Ed's placement time. She indicated that she had similar concerns in the past, but this time her concerns were "[g]reater" because her "daughter was present and [she] was extremely concerned for her wellbeing." She also confirmed that Ed had been ordered to do drug testing and that she had not been similarly ordered. When her lawyer asked whether she "recall[ed] why drug testing was ordered[,]" Ed's lawyer objected. The court directed her lawyer to rephrase the question. The following exchange then occurred between Nancy and her lawyer:

> Q. [D]id you request drug testing?
>
> A. I did.
>
> Q. And the court ordered drug testing?
>
> A. Yes.
>
> Q. Did you have a specific concern in your mind when you requested drug testing?
>
> A. Yes.
>
> Q. What was the specific concern?
>
>     [Defense counsel]: I will object to relevance at this point. This is from 2013.
>
>     THE COURT: I'm going to overrule the objection. We have been touching on all sorts of dates from 2013 forward please.
>
> ….
>
> Q. What was your specific concern?
>
> A. Heroin use.
>
> Q. Was that the same concern you had on … July 26, 2013?

A. Yes, ma'am.

Q. The same concern you had every time drug testing was ordered?

A. Yes, ma'am.

Q. Was that the same concern you had at an elevated level in June of 2016?

A. Yes, ma'am.

¶12 Both parties made closing arguments. As material here, in her closing argument, Nancy's counsel emphasized that Ed had not seen or contacted his daughter for three and one-half years. She told the jury that Ed wanted to blame his absence on Nancy and her failure to invite him to her home. The lawyer then said: "Why? Because he wasn't welcome there. Why wasn't he welcomed? Heroin."

¶13 In his closing, Ed's counsel reminded the jury that Nancy would not be flexible in accommodating Ed's schedule for the weekly supervised visitation, that Ed became depressed, was "denied visitation with" his child, and he was "denied phone calls." Ed's counsel emphasized that Nancy's family attended Kim's school events and birthday parties but that Ed and his family were not invited and that if Ed had shown up at Nancy's house, she would not have let him in. Ed's lawyer suggested the lack of contact was not Ed's fault—it was Nancy's. He referenced "potential heroin use" and told the jury that it was "misdirection" and "uncorroborated[.]" He also argued that the jury should consider whether Ed's lack of contact was caused by "interference by another party." He said Ed "tried his best[,]" and "[h]e wanted to figure it out like adults [instead of going back to family court], but ultimately it was prevented."

¶14    In rebuttal, Nancy's lawyer's argued that Ed "has been MIA for three and a half years. Why? Heroin." She emphasized Ed had no contact with his child for 1,288 days and pointed out that if Nancy was interfering with visitation, Ed could have sought relief in the family court. She told the jury that "[h]eroin kept [Ed] away for 1,288 [days]."

¶15    The jury returned a verdict finding Ed had abandoned his daughter for six months or longer and that he did not have good cause for doing so. The trial court then held a dispositional hearing and found that it was in Kim's best interest to terminate Ed's parental rights.

¶16    Ed filed a postdisposition motion alleging he received ineffective assistance of trial counsel, and the postdisposition court held a ***Machner***[6] hearing. Ed's trial counsel testified about why he did not object to the rebuttal testimony or the reference to heroin use in closing arguments. He explained that he felt that, based on the court's prior rulings and after the objection he did make was overruled, any further objections would have been unsuccessful. He testified that with respect to the closing argument, his strategy was to address the heroin reference in his closing and point out that the evidence did not support heroin use.

¶17    The postdisposition court found that trial counsel's failures to object were strategic decisions and not deficient. It also found that the rebuttal testimony was proper because Ed admitted to the drug testing during his testimony, and "[t]he new issue … was that there was drug testing court ordered admitted to by [Ed]." It additionally found that the "heroin use" "was offered to rebut" Ed's good

---

[6] *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).*

cause defense for his failure to visit or communicate. Further, the court also found that even if trial counsel's conduct was deficient, Ed failed to show that his counsel's deficiency prejudiced him. The court therefore denied Ed's postdisposition motion. Ed now appeals.[7]

## II. DISCUSSION

¶18 The issue in this case is whether Ed's trial counsel provided ineffective assistance. Although this is not a criminal case, Ed has the right to effective counsel because he contested the termination petition. *See* WIS. STAT. § 48.23(2)(b) ("In a proceeding involving … an involuntary termination of parental rights, any parent who appears before the court shall be represented by counsel[.]");[8] *see also* **A.S. v. State**, 168 Wis. 2d 995, 1005-06, 485 N.W.2d 52 (1992) (explaining the right to counsel must be *effective* and adopting the **Strickland v. Washington**, 466 U.S. 668 (1984), test for evaluating ineffective assistance of counsel claims in termination-of-parental-rights proceedings).

¶19 A defendant is denied effective assistance when counsel performs deficiently and the deficiency is prejudicial. **Strickland**, 466 U.S. at 687; **State v. Pitsch**, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). "An ineffective assistance of counsel claim presents a mixed question of fact and law." **State v. Pico**, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. This court will not reverse the postdisposition court's findings of fact unless clearly erroneous. **Id.** "Findings of

---

[7] Ed initially appealed only from the termination-of-parental-rights order but subsequently moved this court to remand the matter so he could file a postdisposition motion alleging ineffective assistance of trial counsel. This court granted the motion in a July 12, 2022 order.

[8] The exceptions listed in the statute do not apply.

11

fact include 'the circumstances of the case and the counsel's conduct and strategy.'" ***State v. Thiel***, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). Whether counsel's performance was deficient and whether the deficient performance was prejudicial are questions of law we review de novo. ***State v. Sanchez***, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). An appellant alleging he received ineffective assistance must satisfy both prongs to establish ineffective assistance of counsel. ***State v. Carter***, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695.

¶20    "A lawyer's performance is not deficient unless he or she 'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" ***State v. Ndina***, 2007 WI App 268, ¶13, 306 Wis. 2d 706, 743 N.W.2d 722 (quoting ***Strickland***, 466 U.S. at 687). "To prove prejudice, a defendant must establish that '*particular* errors of counsel were unreasonable' and 'that they *actually* had an adverse effect on the defense.'" ***State v. Sholar***, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). This court "evaluate[s] whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" ***Id.*** (citation omitted). "Our concern is whether the error rendered the trial unfair and unreliable." ***Id.*** (citation omitted). If this court concludes an appellant failed to establish his lawyer acted deficiently, we need not address the prejudice prong. ***Strickland***, 466 U.S. at 697. This court concludes that Ed failed to establish his trial counsel provided ineffective assistance.

### A. Rebuttal Testimony

¶21 Ed first claims his trial counsel should have objected to Nancy's rebuttal testimony for lack of foundation because Nancy lacked personal knowledge of him using heroin and also because this was improper rebuttal testimony. This court rejects Ed's argument.

¶22 The postdisposition court rejected Ed's argument because the testimony at issue was proper rebuttal testimony, and trial counsel provided a reasonable strategic reason for not objecting. The court reasoned:

> So the question itself was not what was the drug testing … it was for her to explain why she even requested drug testing. The answer was heroin use. The answer is her explanation of her concern as to why she requested drug testing. She was not asked whether [Ed] was a drug user or not. She was not asked if she had any documents to supplement that he was a drug user. She was only asked for a reason for her concern to justify her requested drug testing. In other words, why did you ask for drug testing and what was the concern?
>
> Now, as additional foundation, [Ed] did admit to prior drug testing on more than one occasion. In document 142 at page 18 commencing at line 6 he's asked: "Who was ordered to submit to drug testing?
>
> ANSWER: I was
>
> NEXT QUESTION: What was the drug testing for?
>
> ANSWER: Presence of drugs in my system.
>
> ….
>
> [QUESTION:] Was that the first time you were court ordered to do a drug test?
>
> ANSWER: I don't believe so."
>
> So [Ed] had admitted not only that he was tested, but that he was tested on more than one occasion. So this Court believes that there was more than sufficient

13

foundation for that testimony based upon the fact that [Nancy] requested testing, the family court ordered testing, [Ed] acknowledged that he had been tested for drugs in his system on more than one occasion, and [Nancy's] response to the questions indicated what her concern was in bringing up the issue of testing.

[Ed's trial counsel] did object to relevance the first time the question was asked, and I overruled that objection….

Meaning that again as to relevance, the parties had argued back and forth about visitation and why they didn't have visits. And the defense was trying to bring up good cause for failure to visit or communicate, and the drug testing issue kept [coming] up as part of that argument in contradiction to the claim of good cause.

¶23 The postdisposition court also noted that trial counsel's choice to not object was a strategic decision. Trial counsel had already objected and had been overruled, and so it was reasonable for counsel to not continue objecting. The court also found that this testimony was proper in rebuttal based on Ed's testimony during cross-examination about drug testing; therefore, Nancy's rebuttal testimony explaining the reason for the drug testing provided proper clarification and prevented speculation. This court agrees both that this was proper rebuttal testimony and that there was a sufficient foundation, particularly given the good cause defense. Further, this court agrees with the postdisposition court that trial counsel's decision not to object was a reasonable strategy. Accordingly, this court cannot conclude Ed's trial counsel acted deficiently in failing to object to the rebuttal testimony.

*B. Closing Argument*

¶24 Next, Ed claims his trial counsel provided ineffective assistance by failing to object during Nancy's closing argument when her counsel repeatedly referenced heroin and told the jury Ed's abandonment period was caused by his

purported heroin use. The postdisposition court rejected this argument, noting that it instructed the jury that closing arguments were not evidence, and the jury is presumed to follow the instruction. Moreover, the court explained: "Attorneys are entitled to a wide latitude in arguments and comments on the evidence." It explained that heroin use was not a question on the verdict, and this remark was made in response to Ed's defense for why he abandoned his child for such a long period of time. The court found that trial counsel's decision to not object was a reasonable strategic one given that trial counsel was trying to avoid emphasizing the purported heroin use. It explained:

> If an objection is made during closing, that requires the Court to first of all interrupt the closing; it then requires that the Court decide what to do; and then give instruction to the jury. It could be argued that this is a tactical and strategy decision and that interrupting a closing argument may in fact send a negative impression to the jury. One thing this Court believes it does do is it stresses what was said that caused the objection no matter how often we try to correct it.

¶25 The postdisposition court found that trial counsel's decision to not object was reasonable, proper, and not deficient. This court agrees with the postdisposition court's analysis and adopts this reasoning as its own. Objecting to the heroin remarks would have drawn further attention to them, and trial counsel's

plan to refute them in his closing constituted a reasonable strategic approach.[9] Moreover, counsel is given "considerable latitude in closing arguments," *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166, and counsel had already been overruled by the trial court during the questioning, making it reasonable to conclude the trial court would have also overruled the same objection during closing, *see Door Cnty. DHFS v. Scott S.*, 230 Wis. 2d 460, 466, 602 N.W.2d 167 (Ct. App. 1999).

### C. Postdisposition Court's Prejudice Analysis

¶26    Finally, Ed contends the postdisposition court erred when it concluded that his trial counsel's failure to object did not prejudice him. Because this court has concluded that trial counsel did not act deficiently, it is not necessary to determine whether the postdisposition court's alternate finding on prejudice was correct. If this court concludes an appellant failed to establish his lawyer acted deficiently, we need not address the prejudice prong. *See Strickland*, 466 U.S. at 697; *see also Hussey v. Outagamie County*, 201 Wis. 2d 14, 17 n.3,

---

[9] Ed relies on *State v. Jorgensen*, 2008 WI 60, 310 Wis. 2d 138, 754 N.W.2d 77 (2008), arguing that, like the inappropriate reference to the defendant as a "'chronic alcoholic'" in that case, *id.*, ¶30, which was one of many errors the supreme court pointed to in concluding Jorgensen's constitutional rights had been violated, Nancy's lawyer here inappropriately suggested that Ed was a heroin addict. In *Jorgensen*, the prosecutor's "'chronic alcoholic'" comment related back to evidence the supreme court determined was inadmissible, such as the transcript from the prior hearing describing Jorgensen's behavior in court and a preliminary breath test administered in the courtroom. *Id.*, ¶¶28-30. Here, however, Nancy's testimony regarding concerns about Ed's purported heroin use was admissible, and Ed had an opportunity to cross-examine Nancy about her heroin and drug-related concerns. Thus, even if this court were to assume counsel's references to heroin use during closing arguments were inappropriate, counsel did not describe Ed as a heroin addict or chronic heroin user, and the jury heard ample testimony related to Ed's lack of contact with Kim for over three years that was entirely unrelated to any purported drug use.

548 N.W.2d 848 (Ct. App. 1996) ("If a decision on one point disposes of the appeal, we will not consider other issues raised.").

¶27 Based on the foregoing, Ed is not entitled to a new trial.[10]

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] Counsel is reminded that the appellate rules do not allow citation to unpublished opinions predating July 1, 2009, as persuasive authority. *See* WIS. STAT. RULE 809.23(3).