[No. E052558. Fourth Dist., Div. Two. July 13, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY STEVEN PENA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 2., 3. and 4. under Issues and Discussion.

## Counsel

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant Bobby Steven Pena.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Louie Oscar Pena.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Gary W. Brozio and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RAMIREZ, P. J.**—A jury convicted defendants, brothers Bobby Steven and Louie Oscar Pena, of attempted murder (Pen. Code, §§ 664, 187, subd. (a)),[1] two counts of assault with a firearm (§ 245, subd. (a)(2)), discharging a firearm from a motor vehicle (former § 12034, subd. (c)) and actively participating in a criminal street gang (§ 186.22, subd. (a)). The jury found that during the attempted murder a firearm was discharged (§ 12022.53, subds. (c) & (e)), during the assaults a principal was armed with a firearm (§ 12022.5, subd. (a)) and that the attempted murder, the assaults and the discharge of a firearm from a motor vehicle were committed for the benefit of a criminal street gang. Defendants appeal, contending that members of their family

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

should not have been excluded from the final portion of the trial, the jury was misinstructed on attempted murder and the gang substantive offenses and enhancements, insufficient evidence supports the gang substantive offenses and enhancements, and sentencing error occurred. We agree with defendants that the jury was misinstructed on the gang substantive offenses and enhancements and we reverse those convictions and findings. On agreement of the parties, we also stay defendants' sentences for discharging a firearm from a motor vehicle. We reject defendants' remaining contentions and affirm the rest of the judgment.

## FACTS

Bobby and Louie were members of the Brown Pride Crew (BPC) gang in Moreno Valley. On August 18, 2007, Louie drove by an associate of a rival gang (the first victim), who was walking with his friend (the second victim), and yelled insults at the first victim and asked him if he wanted to be shot. A short time later, Louie's car drove by the two again, this time followed by a car driven by defendants' cousin, with Bobby in the backseat. Bobby shot at the first victim and the car he was in took off. Defendants' mother had been previously targeted by the rival gang in friction between the gangs.

## ISSUES AND DISCUSSION

### 1. Exclusion of Members of Defendants' Family

On the first day evidence was taken, and during the first victim's testimony, the trial court told both defense attorneys to be sure to tell "the family" not to interact with the jury inadvertently. During the defense case, between the testimony of defendants' cousin and Bobby, the trial court noted on the record, concerning "the family," that a lady in black appeared to be texting or doing something. Louie's attorney said that she had a notepad and pencil and was writing. The trial court noted that the lady's friend was doing the same thing. The court also noted that another person in the audience wanted to tell Louie's attorney something about a witness, and while they did this after the jury left the courtroom, they could not do this in court. The trial court added, "Tell them stone face, look ahead, pay attention."

During the People's rebuttal, while the case agent, the last witness to take the stand, was testifying, he was asked by Bobby's attorney if he saw defendants' mother in the courtroom audience. The case agent said he did. Bobby's attorney said he was going to ask that she be excused because he intended to call her as a witness. The trial court told her to wait outside and not to talk about the case.

A short time later, the trial court conducted a hearing outside the presence of the jury. The court said it had observed two jurors pulling the courtroom

clerk aside and talking. The court asked the clerk what they had said. The clerk reported, "They stated that the family of the defendants, they felt, were following them, sort of, wherever they were going, whether it would be at lunch or if they go into the jury room to get some water. Something to that effect; that they were going into the jury room, and it was making them uncomfortable." The prosecutor added that she had had a similar incident that morning with defendants' mother. She explained, "[The mother] was standing at the door waiting, and I said, 'Excuse me,' and she just kind of gave me a dirty look and wouldn't move. And I said, 'Excuse me' to get by to get in the courtroom, and she moved, like, a quarter of an inch. [¶] So I can see how they've been out there, you know, kind of being a little bit intimidating." The trial court asked Bobby's attorney if he was going to call the mother as a witness and he said, "No, I'm not going to now." The trial court then said, "Then tell mom to leave. They can't be here or around the courthouse anywhere." Louie's attorney asked the trial court how many spectators it wanted to exclude. The trial court said two rows, 10 to 12 people. Defense counsel objected to the exclusion of "the entire family." They said if the trial court wanted to hold a hearing to find out who the offenders were and exclude them, that would be appropriate. The trial court responded, "[W]e're not going to delay the trial to have individual mini trials about who it was and put the juror on the spot to say who it was. That would totally skew this jury. I think it would be bad for the defense, and it's going to be a delay of time for all of us. [¶] They are all excluded." Thereafter, the case agent finished up his testimony, addressing only gang evidence and reports that had been made to the police on August 18, 2007.

In denying defendants' postverdict motions for a new trial on the basis of this ruling, the trial court said, "[T]his [happened] the day before closing arguments. [¶] . . . [¶] . . . [T]he options as presented by the parties were have a hearing where you ask the jurors what happened, and then you ask the jurors to help distinguish which family members, was it all or some, that participated in this activity. Or the other option was just to excuse the family and go forward, which is the option that I chose. And I did that, because I didn't want to delay the jury. [¶] We were getting towards the end, and the jurors, when they do complain, frequently complain about things going longer than anticipated, and, you know, what they consider undue delays. And second, and as I said on the record at the time, I didn't want to have mini trials where we cross-examine in what would seem to the jurors like cross-examination, on exactly who did this, and have a line of the family where the jurors would point out who was the exact one. [¶] And I felt that would truly prejudice the trial, and against the defendant[s] . . . . But it would prejudice the trial and create a mini trial. . . . So I excluded the entire family so we wouldn't have to go through that lineup kind of procedure. . . . [¶] . . . I did exclude the family, but [the courtroom] was still open to the public,

reporters, other people could have come in. So I don't think that's a ground [for a new trial]. And I don't think it prejudiced the jury at all, because we never brought it to their attention. People come and go, so people aren't here. The jurors don't know why they're not here. And they were never informed, so it couldn't prejudice the jurors."

Defendants here contend that the trial court committed error in excluding members of defendants' family during what was probably the last 30 minutes of the evidence portion of the trial and this error requires reversal of all their convictions. We disagree.

■ "[T]he United States Supreme Court 'has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial . . . . Such circumstances will be rare, however, and the balance of interests must be struck with special care.' (*Waller* [*v. Georgia* (1984)] 467 U.S. [39,] 45 [81 L.Ed.2d 31, 104 S.Ct. 2210].) Consequently both the defendant's and the public's right may be subjected to reasonable restrictions that are necessary or convenient to the orderly procedure of trial, and the trial court retains broad discretion to control courtroom proceedings in a manner directed toward promoting the safety of witnesses. (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121 [99 Cal.Rptr.2d 149, 5 P.3d 203].) [¶] . . . In the case of a partial closure [(where some, but not all, spectators are asked to leave)], the Sixth Amendment public trial guarantee creates a ' "presumption of openness" ' that can be rebutted only by a showing that exclusion of the public was necessary to protect some ' "higher value" ' such as the defendant's right to a fair trial . . . . (See *Waller, supra,* 467 U.S. at pp. 44–45.) When such a 'higher value' is advanced, the trial court must balance the competing interests and allow a form of exclusion no broader than needed to protect those interests. (*Ibid.*) ■ Specific[2] . . . findings are required to enable a reviewing court to determine the propriety of the exclusion. (*Id.* at p. 45.) . . . [¶] The identity of the spectator sought to be excluded is highly relevant in a partial closure situation. . . . The application of the above principles and the issue whether an accused has been denied his constitutional right to a public trial cannot be determined in the abstract, but must be determined by reference to the facts of the particular case. [Citation.]" (*Esquibel, supra,* 166 Cal.App.4th at pp. 552–553 (*Esquibel*); accord, *People v. Prince* (2007) 40 Cal.4th 1179, 1279 [57 Cal.Rptr.3d 543, 156 P.3d 1015].)

---

[2] Although *People v. Esquibel* (2008) 166 Cal.App.4th 539 [82 Cal.Rptr.3d 803] included the word "written" here, citing to page 45 of *Waller* (*Waller, supra,* 467 U.S. at p. 45), no such requirement of *written* findings exists on page 45 or any other page of *Waller*. When the United States Supreme Court had a later opportunity to hold that written findings were required, i.e., in *Presley v. Georgia* (2010) 558 U.S. 209 [175 L.Ed.2d 675, 130 S.Ct. 721] it did not do so.

Defendants agree with *Esquibel*'s conclusion that the temporary exclusion of select supporters of the accused does not create an automatic violation of the constitutional right to a public trial. (Accord, *People v. Bui* (2010) 183 Cal.App.4th 675, 688 [107 Cal.Rptr.3d 585].) However, defendants assert, here, the trial court erred in excluding their entire family from the last 30 minutes of testimony, closing argument and jury instruction.

■ The trial court identified three interests that, in its opinion, required the exclusion of defendants' family members, i.e., the right of both defendants to a fair trial, the right of the jurors to feel free from intimidation, and the right of jurors to an undelayed conclusion of their duty at this late point in the trial.[3] The trial court was required to balance defendants' rights to a public trial and to the support of their family against these interests. However, it must be kept in mind that defendants' public trial and support rights were not infringed upon throughout the trial, but at the very end, when the only witness testifying was one who had testified previously in the presence of their family members. (See *People v. Woodward* (1992) 4 Cal.4th 376, 385, 386 [14 Cal.Rptr.2d 434, 841 P.2d 954] [a de minimis exclusion does not rise to the level of a constitutional violation where, inter alia, it did not include any evidentiary portion of the trial and lasted only one and one-half hours].)

■ The exclusion of defendants' family at this late stage of the trial must have been no broader than that which was necessary to protect the interests identified above. At this juncture, we examine the alternatives available to the trial court. The court could have merely concluded that it did not know whether the complaints of two jurors that members of defendants' family had been following them to lunch and into the jury room were true and instructed either the jury not to have any contact with members of defendants' family, or instructed members of the family not to have any contact with jurors. However, instructing the jury not to have any contact with family members would surely have frustrated those two jurors who felt they were being followed by family members. They, i.e., the jurors, were not having improper contact with family members. Rather, family members were committing inappropriate acts with them. Alternately, the trial court counseling defendants' family not to have contact with the jury would have been less than effective. First, members who were following jurors could simply have concluded that since they were merely following jurors and not having contact with them, they would not be disobeying the court's directive by continuing with such conduct. Further, the fact that this was not the first

---

[3] Contrary to the assertion of appellate counsel for Bobby at oral argument, the latter interest was not the only one the trial court mentioned.

problem the trial court encountered with the family[4] suggests that such a directive would have been ineffectual.

Another alternative would have been for the trial court to have a full hearing and determine whether, in fact, the acts of apparent intimidation had occurred and who had committed them, then excusing those offending family members. However, as the trial court reasonably pointed out, this would have delayed the trial at a point where most jurors were anticipating the end of their service and it would have put jurors in the untenable position of having to identify, from all of defendants' family members, those who had engaged in the conduct that made them uncomfortable. Delaying the trial had the potential of angering all the jurors, to the detriment of defendants, whose family members had engaged in the conduct.[5] Expecting two of the jurors to act as witnesses against defendants' family members and subjecting those jurors to cross-examination by defense counsel would have necessitated their removal from the jury. To imagine that the trial could have proceeded, from that point, to a successful conclusion, is folly. A mistrial would have been necessary.

■ The alternative chosen by the court was a reasonable one under the circumstances. Without informing other jurors, who were not, at that point, aware of the asserted conduct, and without giving the accusation its imprimatur, the court simply removed anyone who might have participated in it. This was a gang case, which necessitated service by jurors above and beyond that required in nongang cases. The fact that not one, but two, jurors reported acts of intimidation made it much more likely that the accusation was not the result of misunderstanding or mentally unsound thinking on the part of the jurors. Because of this, and because of the untenable position the targeted jurors would have been placed in by having to identify who in defendants' family engaged in this conduct and be subject to cross-examination by defense counsel, we cannot agree with defendants that the trial court was obliged to conduct a hearing to determine, in fact, if the acts of intimidation occurred and by whom they were committed.

Although defendants invite us to rely on two out-of-state cases in concluding that what the trial court did here was improper, those cases are distinguishable. In *State v. Ortiz* (1999) 91 Haw. 181 [981 P.2d 1127], the Supreme

---

[4] The fact that trial counsel for Bobby changed his mind about calling defendants' mother to the stand after hearing the prosecutor's account of her encounter with the mother demonstrates that even defense counsel found it credible. Additionally, we doubt that trial counsel for Bobby failed to tell the mother that she needed to stay out of the courtroom until he called her to the stand. Therefore, the inference can be drawn that she disobeyed counsel's directive and remained in the audience before being called to testify.

[5] At least two of the jurors would have known that it was defendants' family members' conduct that precipitated the delay, which might have prejudiced them against defendants.

Court of Hawai'i concluded that the exclusion of the defendant's *entire* family, *including his girlfriend*, from five days of trial was broader than necessary in the face of allegations that the defendant's mother, sister and brother-in-law were being investigated for possible jury tampering and the exclusion remained in place after the trial court had questioned each juror and satisfied itself that tampering had not occurred. (*Id.*, 981 P.2d at p. 1138.) Further, the record did not show that the trial court had considered any alternatives to exclusion, even one proposed by the defense, and the supreme court suggested that it and other alternatives could have worked. Finally, the trial court made no findings other than one that was too broad and general to support the exclusion. In *State v. Ndina* (Ct.App. 2007) 2007 WIApp 268 [306 Wis.2d 706, 743 N.W.2d 722], also cited by defendants, the defendant failed to object to the removal of his entire family, except for his mother, during the evidentiary portion of a trial of an intrafamily stabbing, after family members twice created disturbances in the courtroom during proceedings by talking loudly and animatedly while witnesses were on the stand and shaking their heads in agreement or disagreement at testimony. (*Id.*, 743 N.W.2d at p. 725.) Because the defendant had failed to object to the exclusion, the issue was analyzed as one of incompetency of trial counsel, which, of course, required the defendant to demonstrate prejudice, unlike the situation, as here, where defendants objected. (*Id.* at p. 726.) The Wisconsin court concluded that the defendant could not show that he would have received a more favorable outcome had his relatives not been excluded from the courtroom because the jury was not aware of their exclusion and sufficient evidence supported the verdict. (*Id.* at p. 728.) Because, due to the unique procedural context of *Ndina*, prejudice had to be demonstrated, there is nothing in the opinion that is relevant to our discussion here.

Finally, we disagree with defendants that the court failed to make an adequate record of its reasons for the exclusion as required by *Waller v. Georgia, supra*, 467 U.S. at page 45—the above cited comments by the trial court, both at the time of the ruling and after trial, prove otherwise.

2.–4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The enhancements under section 186.22, subdivision (b) for counts 1 through 4 and the convictions of section 186.22, subdivision (a) (count 5) for both defendants and the enhancement for count 1 pursuant to section

---

*See footnote, *ante*, page 944.

12022.53, subdivisions (c) and (e) for Louie are reversed due to instructional error. If the People opt not to retry defendants for those enhancements and substantive offenses, the trial court is directed to vacate the 15-year minimum term on Bobby's life sentence for attempted murder, the 20-year enhancement on Louie's life sentence for attempted murder, and the stayed section 186.22, subdivision (b) enhancements on counts 2, 3 and 4 and the stayed two-year term for count 5 for both defendants. The trial court is directed to stay the term for count 4 pursuant to section 654. In all other respects, the judgment is affirmed.

McKinster, J., and Richli, J., concurred.

Appellants' petitions for review by the Supreme Court were denied October 24, 2012, S204780. Kennard, J., was of the opinion that the petition should be granted.