# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-2928

JOHNNIE WALTON,

*Petitioner-Appellant*,

*v.*

KENNETH R. BRILEY, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2539—**John F. Grady**, *Judge.*

ARGUED DECEMBER 11, 2003—DECIDED MARCH 17, 2004

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

BAUER, *Circuit Judge.* Petitioner-Appellant, Johnnie Walton, brought this action for a writ of *habeas corpus* under 28 U.S.C. § 2254(a) . He claimed that his trial in the Cook County Circuit Court was conducted in violation of his Constitutional right to a public trial. The district court did not agree and denied the writ. We reverse.

## I. BACKGROUND

Johnnie Walton was arrested after delivering a sizeable quantity of phencyclidine, more commonly known as PCP,

to an undercover police officer. He was tried in the Cook County Circuit Court before Judge Ralph Renya on September 19, 21, and October 2, 1989. The first two sessions, which encompassed the prosecution's entire case, were held in the late evening hours after the courthouse had been closed and locked for the night. Walton's fiancée twice attempted to attend the trial and was twice prevented from doing so. A confidential informant involved in the case was also prevented from attending the trial because the courthouse was locked. Walton was convicted and ultimately sentenced to a term of life in prison without the possibility of parole.

After Walton exhausted his state remedies he filed the instant *habeas corpus* petition. *See* 28 U.S.C. § 2254(a). The district court found that the first two-thirds of Walton's trial had indeed been held during the late evening hours and therefore, the public had been excluded; nevertheless, it held that Walton's failure to object to the lateness of the trial resulted in a waiver of the issue.

## II. DISCUSSION

We review the district court's findings of fact for clear error and its findings of law de novo. *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1044 (7th Cir. 2001). The Antiterrorism and Effective Death Penalty Act of 1996 does not apply in this case because the state courts did not adjudicate the claim on the merits. *Id.*

The Respondent claimed that Walton procedurally defaulted on this *habeas* claim. The district court rejected this argument but found that the Respondent had failed to develop the factual record to support such a finding. *United States ex rel. Walton v. Gilmore*, No. 97 CV 2539, 1998 WL 787220, *2 (N.D. Ill Nov. 4, 1998).

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. This right is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968). The benefits of a public trial, although "frequently intangible, difficult to prove, or a matter of chance," *Waller v. Georgia*, 467 U.S. 39, 49 n.9 (1984), are a central tenant of our judicial structure. Public trials help to prevent perjury, unjust condemnation, and keep the accused's "triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* at 46 (*quoting In re Oliver*, 333 U.S. 257, 270 n.25 (1948)). Such trials may encourage unknown witnesses to come forward and further serve to preserve the integrity of the judicial system in the eyes of the public. *Id.*

While criminal trials that are closed to the public are strongly disfavored, they are not forbidden. A party seeking to bar the court's doors to the public must satisfy a four-part test: (1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure. *Id.* at 48. The record of this case fails to show that the court even considered the four-part test. While this may be due to the fact that the closure was inadvertent and merely a result of trial court Judge Renya's honorable desire to "get it done" (Supp. App. at 85), nevertheless, the judge's devotion to work is not an interest sufficient to overcome Walton's constitutional guarantee of a public trial.

The district court suggested that it might be important that Judge Renya unintentionally prevented the public from attending the trial. *United States ex. rel. Walton v. Gilmore*,

No. 97 C 2539, 2001 WL 709463, *2 (N.D. Ill. Aug. 10, 2001). Whether the closure was intentional or inadvertent is constitutionally irrelevant.[1]

The district court found that "the first two sessions of the trial did take place, as Walton alleges, during the late evening hours of September 19 and 21, 1989 and that the sessions may have lasted until after 10:30 p.m." *Walton v. Gilmore*, 2001 WL 709463, at *1. The lateness of the hour served to "foreclose the attendance of the public at the first two sessions. . . . Walton has proved his claim that the first two sessions, encompassing the entirety of the prosecution's evidence, were closed to the public." *Id*. Despite Gilmore's argument to the contrary, we find that the district court's factual findings are not clearly erroneous. Because Walton need not show specific prejudice, these facts are sufficient to show a violation of Walton's right to a public trial. *Waller*, 467 U.S. at 49-50.

Walton's counsel failed to object to the late trial or to its effect of barring the public from attending the trial. Based on this failure, the district court found that the error was waived. *Id*. at 2. Our jurisprudence does not support such a holding and we therefore, reverse.

The Supreme Court has noted, "[t]he Constitution requires that every effort be made to see to it that a defend-

---

[1] This court is aware of a case from the Tenth Circuit which "requires some affirmative act by the trial court meant to exclude persons from the courtroom" before a defendant can claim a violation of his Sixth Amendment right to a public trial. *United States v. Al-Smadi*, 15 F.3d 153, 154 (10th Cir. 1994). That case is distinguishable in that the court was closed to the public simply because the trial, which started when the courthouse was still open, ran late. We make no finding as to whether or not the facts in *Al-Smadi* would constitute a Sixth Amendment violation in this Circuit.

ant in a criminal case has not unknowingly relinquished the basic protections that the Framers thought indispensable to a fair trial." *Schneckloth v. Bustamonte*, 412 U.S. 218, 241-42 (1973). Consequently, "every reasonable presumption should be indulged against" waiver of a fundamental trial right. *Hodges v. Easton*, 106 U.S. 408, 412 (1882). This heightened standard of waiver has been applied to plea agreements, the right against self-incrimination, the right to a trial, the right to a trial by jury, the right to an attorney, and the right to confront witnesses. *See, e.g., Brady v. United States*, 397 U.S. 742, 748 (1970); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Moltke v. Gillies*, 332 U.S. 708, 723-26 (1948). Furthermore, in dealing with the fundamental trial right to representation by counsel, the Supreme Court has held that presumption of waiver from a silent record is impermissible. *Carnley v. Cochran*, 369 U.S. 506, 515 (1962).

The common element of the cases mentioned in the paragraph above is the fact that the rights with which they deal all concern the fairness of the trial. The right to a *public* trial also concerns the right to a *fair* trial. *Waller*, 467 U.S. at 46 ("The requirement of a public trial is for the benefit of the accused; that the public may see he is *fairly* dealt with and not unjustly condemned . . . .") (emphasis added); *see also* discussion *supra* Part II, paragraph 3. So, like other fundamental trial rights, a right to a public trial may be relinquished only upon a showing that the defendant knowingly and voluntarily waived such a right.

The record does not indicate that Walton intelligently and voluntarily relinquished a known right. Therefore, we hold that Walton's right to a public trial was not waived by failing to object at trial. Since he has established a violation of his Sixth Amendment right to a public trial, as applied to the states through the Fourteenth Amendment, we reverse and remand with directions to issue the writ unless the state elects to retry Walton within 120 days.

REVERSED AND REMANDED WITH DIRECTIONS.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*