STATE of Wisconsin, Plaintiff-Respondent,

v.

David L. VANNESS, Defendant-Appellant.

Court of Appeals

*No. 2006AP2535–CR. Submitted on briefs May 22, 2007. —Decided July 3, 2007.*

2007 WI App 195

(Also reported in 738 N.W.2d 154.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Chad A. Lanning* of *Lanning Law Offices, LLC* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *J.B. Van Hollen*, Attorney General.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. David Vanness appeals the denial of his motion for a new trial. Vanness argues he is entitled to a new trial because his Sixth Amendment right to a public trial was violated when the courthouse doors were locked and the public was denied access to the courtroom while he presented his case and the State presented its rebuttal. We agree, reverse the judgment and remand the matter for a new trial.

BACKGROUND

¶ 2. Vanness was charged with operating a motor vehicle while intoxicated—fifth offense, operating after revocation, and operating with a prohibited alcohol

concentration—fifth offense. His one day jury trial was held on December 12, 2005. The State completed its evidence at 4:24 p.m. Pursuant to the county's policy, the courthouse doors were locked at 4:30 p.m. Although the doors to the courtroom remained open, both parties agree the doors of the courthouse were locked during the presentation of Vanness's entire defense and the State's rebuttal.

¶ 3.   Vanness's wife left the courthouse temporarily after the State's evidence. When she tried to return during the State's rebuttal, she discovered she was locked out. She eventually regained entry to the courtroom through the sheriff's department and informed Vanness's counsel the courthouse was locked. Following a discussion off the record, Vanness moved for a mistrial. The court denied his motion. The jury then convicted Vanness on all counts. Vanness then moved for a new trial, which was denied.

¶ 4.   The State and Vanness entered into a stipulation regarding some of the facts. They stipulated the trial minutes accurately described the events relating to when the court was in session and when the courthouse doors were closed and reopened. According to the minutes, the courthouse was closed from about 4:30 p.m. to about 7 p.m. From 4:24 p.m. to 5:04 p.m., the court was in recess. From 5:04 p.m. to 6:15 p.m., the court was in session, and the jury heard Vanness's defense and the State's rebuttal. The court was then in recess until the doors to the courthouse were reopened around 7 p.m.

¶ 5.   A motion hearing was scheduled with a different judge.[1] At that hearing, the original judge testi-

---

[1] Following his conviction, Vanness moved for a new trial, arguing his right to a public trial had been violated. At the

fied he knew the county's policy was to lock the courthouse doors at 4:30 p.m. and he "would believe the doors would probably have been locked at 4:30, but ... [he] wouldn't have known that for a fact." The court denied Vanness's motion, stating in part that a small portion of the overall case was closed to the public, and there was no indication that the jury or witnesses were aware the trial was closed to the public. Vanness appeals.

DISCUSSION

██

¶ 6.   The only issue raised on appeal is whether the closure of the courthouse, thereby denying public access to the courtroom during the trial, violated Vanness's constitutional right to a public trial. This case requires us to apply the constitution to undisputed facts. The application of constitutional principles to historical facts is a question of law reviewed without deference to the trial court. *State v. Eason*, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625.

¶ 7.   The right to a public trial is protected by the Sixth Amendment to the United States Constitution, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. This right is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148–49 (1968).[2]

motion hearing, Vanness requested Judge Mleziva make findings of fact regarding when the courthouse was reopened and whether he knew the doors were locked. Judge Mleziva indicated he disagreed with Vanness's recollections and eventually recused himself from making a ruling. Judge Diltz then presided over the next motion hearing.

[2] The Wisconsin Constitution also guarantees the right to a public trial. *See* WIS. CONST. art. I, § 7 ("In all criminal prosecu-

¶ 8.  The right to a public trial is a basic tenet of our judicial system, *Walton v. Briley*, 361 F.3d 431, 432 (7th Cir. 2004), rooted in "the principle that justice cannot survive behind walls of silence . . . ." *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966). "The importance we as a Nation attach to the public trial is reflected both in its deep roots in the English common law and in its seemingly universal recognition in this country since the earliest times." *Gannett Co. v. DePasquale*, 443 U.S. 368, 414 (1979) (Blackmun, J., concurring in part and dissenting in part). Public trials help to prevent perjury, unjust condemnation, and keep the accused's "triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* at 380. Public trials may also encourage unknown witnesses to come forward and further serve to preserve the integrity of the judicial system in the eyes of the public. *Id.* at 383. In short, the public trial is " 'the most effectual safeguard of testimony, and of the decisions depending on it; it is the soul of justice; it ought to be extended to every part of the procedure, and to all causes.' " *Id.* at 422 (citation omitted).

¶ 9.  While a public trial is a basic tenet of our judicial system, it is not without exceptions. *Walton*, 361 F.3d at 433. A trial may be closed only when the test set out in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984), has been met.[3] *See Waller v. Georgia*, 467 U.S. 39, 47 (1984). However, where an unjustified closure is trivial, there is also no constitutional viola-

tions the accused shall enjoy the right . . . to a speedy public trial . . . ."). However, Vanness does not argue either the Wisconsin Constitution or statutory law provide him greater protections. Therefore, we do not discuss either.

[3] The *Press-Enterprise* test is:

tion. *See Braun v. Powell*, 227 F.3d 908, 919–20 (7th Cir. 2000); *Peterson v. Williams*, 85 F.3d 39, 42–43 (2nd Cir. 1996). Absent these exceptions, closing a trial to the public violates the constitution.

¶ 10.   The State does not argue the trial was closed to the public pursuant to *Press-Enterprise*. Instead, it claims the closure was so trivial that Vanness's constitutional right has not been violated:

> A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment.

*Peterson*, 85 F.3d at 42.

¶ 11.   Federal courts of appeals have held closures are trivial where the core values of the Sixth Amendment have not been violated. *See id.*; *see also United States v. Ivester*, 316 F.3d 955 (9th Cir. 2003).[4] For example, in *Peterson*, the Second Circuit held the right

---

A party seeking to bar the court's doors to the public must satisfy a four-part test:   (1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure.

*Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004); *see also Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984).

[4] Those values are:   "(1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage wit-

to an open trial was not violated where the closure was only fifteen minutes, the testimony presented was summarized in open court and the closure was entirely inadvertent. *Peterson*, 85 F.3d at 44. Additionally, the Ninth Circuit, in *Ivester*, held briefly asking jurors if they felt safe was an administrative problem and was so trivial so as to not implicate the accused's Sixth Amendment rights. *Ivester*, 316 F.3d at 960.

¶ 12.  Conversely, the circuits have held trial closures are not trivial where critical portions of the trial were closed to the public. *See Walton*, 85 F.3d at 433. For example, the Seventh Circuit, in *Walton*, held the accused's right to a public trial was violated when the state's entire case was presented after the courthouse was locked for the day. *Id*. Additionally, in *United States v. Canady*, 126 F.3d 352, 364 (2nd Cir. 1997), the Second Circuit held closing the court to announce the verdict was not a trivial violation because the verdict is the focal point of a criminal trial. In short, the triviality inquiry goes principally to the length of the closure and what parts of the trial were closed.

¶ 13.  The State argues the court's intent in closing the trial is relevant to our analysis. In making this argument, the State relies upon *United States v. Al-Smadi*, 15 F.3d 153, 154–55 (10th Cir. 1994). Specifically, the State argues this court should adopt *Al-Smadi*'s framework to hold there is no violation in this case because there was no affirmative act by the court to close its doors. The State also contends whether the closure stemmed from an inadvertent act is a critical factor in our constitutional analysis. We disagree. As Vanness points out, the Seventh Circuit

nesses to come forward, and (4) to discourage perjury." *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003).

recently noted "[w]hether the closure was intentional or inadvertent is constitutionally irrelevant." *Walton*, 361 F.3d at 433. Likewise, the *Peterson* decision, which has been relied upon by several circuits and is cited by the State, also indicates the court's intent is irrelevant. *Peterson*, 85 F.3d at 44 n.8. We also conclude the court's intent is irrelevant to determining whether the accused's right to a public trial has been violated by an unjustified closure. Rather, our analysis must focus on the effect of the closing to determine whether a defendant's constitutional right to a public trial has been violated.

¶ 14. Alternatively, the State asserts the entire trial was in fact open to the public because people could gain entry to the courtroom by contacting the sheriff's department. To make this argument, the State relies upon the reasoning of *State v. Von Reeden*, 454 P.2d 149, 150 (Ariz. 1969), and *State v. Gibb*, 303 N.W.2d 673, 678–79 (Iowa 1981). However, in both cases, there was a clear method of gaining entry to the courtroom. *See Von Reeden*, 454 P.2d at 150 (a sign posted on courthouse doors) and *Gibb*, 303 N.W.2d at 679 (a call button located at the front door).

¶ 15. The record in this case does not establish a similar method that was clearly available for the public to gain entry to the trial after the courthouse doors were locked. While Vanness's wife did eventually manage to reenter the courthouse by going through the sheriff's department, the record does not demonstrate how she knew to go to the adjacent jail and request assistance. Although the courtroom doors remained unlocked, the fact that the doors to the courthouse were locked, without an alternative entry, in effect denied the public access to the trial. Therefore, we cannot dismiss Vanness's claims on the grounds the trial was in fact open to the public.

¶ 16. Here, the courthouse was closed from 4:30 p.m. to about 7 p.m. From 4:24 p.m. to 5:04 p.m., the court was in recess. From 5:04 p.m. to 6:15 p.m., the court was in session, and the jury heard Vanness's defense and the State's rebuttal. The court was then in recess until the doors to the courthouse were opened around 7 p.m. Unlike *Peterson* and *Al-Smadi*, the closure of over an hour while the court was in session of a one day trial was not "extremely short." *See Peterson*, 85 F.3d at 44.

¶ 17. Additionally, like *Walton* and *Canady*, important portions of the trial were closed. The public was denied access to the trial during both Vanness's defense and the State's rebuttal, including testimony from two new witnesses. Like the announcement of the verdict, we conclude the accused's response to the accusations against him or her, and the State's rebuttal are critical proceedings in criminal trials. *See Canady*, 126 F.3d at 364. Therefore, the closure was not a trivial violation. Consequently, because Vanness's constitutional right to a public trial was violated, the order and judgment are reversed and the matter is remanded for a new trial.

¶ 18. We recognize this holding may place an additional burden upon governments with already limited resources and there may be reasons unrelated to the conduct of trials which weigh in favor of locking courthouse doors (e.g., security and budgetary concerns). However,

[t]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .

700

*Gannett*, 443 U.S. at 380 (citation omitted). Recognizing the implications of this holding, we must still conclude this basic constitutional right requires an open trial, regardless of when it is conducted. "The Supreme Court has noted, '[t]he Constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the Framers thought indispensable to a fair trial.' " *Walton*, 361 F.3d at 433 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 241–42 (1973)). Courts will simply have to devise methods which protect the accused's right to a public trial.

*By the Court.*—Order and judgment reversed and cause remanded with directions.