COURT OF APPEALS
DECISION
DATED AND FILED

May 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1062-CR**

Cir. Ct. No. **2019CF54**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

RYAN L. BESSERT,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. Ryan L. Bessert appeals from a judgment, entered following a bench trial, convicting him of two counts each of first-degree sexual assault of a child under twelve years old and incest with a child. Bessert seeks a new trial, arguing that he was denied his Sixth Amendment rights under the

United States Constitution. First, he claims he was denied his right to confront witnesses against him when, pursuant to WIS. STAT. § 972.11(2m)(a) (2019-20),[1] the circuit court allowed the victim to testify via closed-circuit audiovisual equipment (CCTV).[2] Second, he claims he was denied his right to a public trial because the courthouse doors were inadvertently locked during the court's deliberations and when the court issued its verdicts.

¶2      For the reasons that follow, we conclude that the circuit court properly applied WIS. STAT. § 972.11(2m)(a) under the circumstances of this case and that Bessert's rights were not violated by the court allowing the victim to testify via CCTV. Further, we assume without deciding that Bessert's right to a public trial was violated, but we conclude that the court employed an appropriate remedy for the constitutional violation by timely reannouncing the verdicts in open court. Accordingly, we affirm.

## BACKGROUND

¶3      Bessert came under investigation for sexual assault in January 2019. As part of that investigation, Alex,[3] who was six years old at the time, participated in a forensic interview and reported several instances of Bessert sexually abusing her in 2015 and 2016, when she was three years old. Sergeant Kyle Rustick, who

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We note that CCTV stands for closed-circuit television, while WIS. STAT. § 972.11(2m)(a) uses the phrase "closed-circuit audiovisual equipment," which can include CCTV. For ease of reference, we will use CCTV to refer to all closed-circuit audio and visual equipment.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name as well as nonidentifying terms for the other witnesses in this case.

served as both an officer with the Antigo Police Department and a deputy with the Langlade County Sheriff's Office, also interviewed Bessert's former girlfriend. The girlfriend reported that between November 2013 and January 2014, she saw Bessert digitally penetrate Alex seven to ten times when she was an infant. According to another witness, Alex was "exhibiting sexualized behaviors, including doll play involving sexual behavior and trying to take off a boy child's pants."

¶4    In March 2019, the State charged Bessert with twenty-six counts related to the sexual abuse allegations.  Fifteen of those charges—all for first-degree sexual assault of a child under the age of twelve, incest, or repeated sexual assault of a child—were for the incidents Bessert's former girlfriend alleged to have occurred between November 2013 and January 2014, when Alex was an infant.  The remaining charges—involving additional counts of the already listed crimes as well as mental harm to a child; exposing genitals to a child; physical abuse of a child, intentionally causing bodily harm; and misdemeanor battery—related to the sexual abuse allegations Alex herself made for the period between 2015 and 2016.

¶5    Prior to trial, the State filed a motion in limine seeking to present Alex's testimony via CCTV as allowed under WIS. STAT. § 972.11(2m)(a).  The State's motion alleged that Alex was "still having emotional issues regarding [Bessert], including frequent nightmares," and "is afraid of [Bessert] and would not be able to adequately testify in the same room as him."  Bessert opposed the State's request.

¶6    At a hearing on the motion, Alex's guardian testified that then-seven-year-old Alex had lived with her for six years.  At the time of the

hearing, Alex had been participating in the early stages of the trial preparation process with the district attorney's office. Although the meetings at this stage involved "fun things" like "playing with [a victim support] puppy," "playing board games," and eating chicken nuggets for dinner, the guardian testified that Alex was aware of the purpose of the meetings. According to her guardian, after the meetings, Alex was "scared": "[A]fter we go home at night she talks about it and then she has nightmares, real bad ones." When questioned about the subject of the nightmares, Alex's guardian explained, "Some of them are with [Bessert] taking [Alex] away from me or lately she's been having nightmares of [Bessert] killing me or slicing my throat and I have to tell her it's okay, you know, I'm here for her." Her guardian further testified to Alex wetting the bed for a few days after these meetings and having angry outbursts where "she beats on the other" children in the home.[4] Based on her guardian's experience as a mother and a foster parent, she testified that this was unusual behavior compared to other children Alex's age.

¶7      Further, Alex's guardian testified that Alex did not want to see Bessert. She reported that Alex had seen Bessert approximately one year earlier at a McDonald's. After that encounter, Alex came home and told her guardian that she no longer wanted to see Bessert.

¶8      At the conclusion of the guardian's testimony, the circuit court heard arguments from the parties. The State reiterated that Alex's nightmares, bed-wetting, and aggression—all of which had developed in the preparation period before trial—and her desire not to see Bessert again demonstrated that testifying

---

[4] Her guardian also testified that Alex had been seeing a counselor to "minimize or deal with trauma," but she had not seen the counselor for months before the hearing due to the counselor's maternity leave.

without the assistance of CCTV would "cause [Alex] serious emotional distress such that she won't be able to reasonably communicate." Bessert objected to the CCTV accommodation, focusing on his confrontation rights, asserting that a "trial is anxious for everyone who testifies," and concluding that "the [S]tate has not met [its] burden … in showing that [Alex] is going to shut down and not be able to reasonably communicate, or that she's going to be suffering from serious emotional distress." Defense counsel did not challenge the constitutionality of WIS. STAT. § 972.11(2m) directly and instead stated that "everyone says and everyone agrees it has survived constitutional muster."

¶9 The circuit court found that the State had met its statutory burden of proof for the CCTV accommodation. The court found Alex's guardian very credible and observed that "she probably knows [Alex] better than anyone at this stage." It concluded

> that forcing [Alex] to testify in the presence of [Bessert], her alleged sexual abuser on multiple occasions, will result in her suffering serious emotional distress such that I am concerned she could not reasonably communicate effectively in this courtroom during the trial, and that video testimony from the other room that the district attorney has spent some time preparing is necessary to minimize the trauma to [Alex] and to provide a setting that is more amenable to securing [Alex's] uninhibited and truthful testimony.

¶10 At the bench trial, Bessert's former girlfriend and Alex both testified consistently with their previous allegations of sexual abuse. To prove the allegations from 2013 and 2014, the girlfriend testified that she witnessed Bessert digitally penetrate Alex while he was changing her diaper and while giving Alex a bath. According to her, Bessert was excited by this behavior.

¶11 The State also called Alex via CCTV to testify to the assaults that allegedly occurred in 2015 and 2016. Alex's testimony was confused and inconsistent. Her testimony began with her statement that "I woke up this morning and [Bessert] was under the bed—under the blankets I mean."[5] When the State attempted to redirect Alex with a question about what she did that morning, Alex stated, "When I woke up I tried to go outside and I was trying to run away because [Bessert] was doing the bad stuff." Alex was asked what she liked to do with Bessert, and she responded, "I only liked to play with him but when he did the bad stuff I didn't like it because when we played on the slide in the backyard I used to play on it." Alex testified that the "bad stuff" meant "[w]hen [Bessert] was touching [her] private" "[w]ith his hand." Alex also testified that Bessert forced her to touch "his private" and that he "touched his private in [her] private."

¶12 According to Alex, when Bessert touched her, she "would try to run away and [she] couldn't" and she "said please stop a lot of times." Alex could not remember how old she was when Bessert did this, but she stated that she was living at his house the first time. The State asked how many times Bessert touched her privates, questioning, "Was it one time, two times or something else?" Alex responded that it was "two times." When asked whether her clothes were on, Alex stated, "I'm pretty sure I had underwear on, but I don't really know. But I'm pretty sure I was naked."[6]

---

[5] On redirect, the State asked Alex, "[D]o you know where [Bessert] stays right now? Do you know where he lives right now?" Alex responded, "No…. I'm pretty sure he's in jail."

[6] The State also entered Alex's forensic interview into evidence, which the circuit court stated it had viewed before the trial.

¶13   Sergeant Rustick testified regarding his investigation.  Through his testimony, the State established that Alex was living with Bessert from November 11, 2013, through the end of that year and that Alex was also with Bessert from November 2015 through June 2016.  Rustick also discussed his interview with Bessert's former girlfriend, explaining that she "didn't know why I had come to see her"; that Rustick did not "mention sexual assault"; and that he did not mention Alex, but rather the girlfriend "brought [Alex] up."

¶14   Bessert testified in his own defense that he did not assault Alex.  He also called his mother and daughter to testify in his defense.  Neither witness was directly asked if they saw Bessert touch Alex, but both witnesses implied that they did not witness any inappropriate behavior between Bessert and Alex.

¶15   During closing arguments, both the State and Bessert acknowledged that Bessert's former girlfriend and Alex were testifying to events that occurred during two separate time periods.  The circuit court then took a short recess to deliberate.  When the circuit court came back on the record, it found Bessert guilty of two counts each of first-degree sexual assault of a child and incest—counts one through four of the Information, which occurred when Alex was an infant and to which Bessert's former girlfriend testified.  The court acquitted Bessert on all remaining charges.

¶16   Before sentencing, Bessert filed a motion for a new trial, arguing that he was denied his constitutional right to a public trial.  According to Bessert, "the courthouse was improperly closed to the public from 4:30 P.M. until the conclusion of trial at 5:00 P.M."  He stated that "[t]his closure was not at the request of any party" and that "the defense was not aware the courthouse doors automatically locked until after trial was concluded."

7

¶17    At the motion hearing, the parties stipulated "that the courthouse door was locked at 4:30 p.m." on the date of Bessert's trial.  The circuit court also took judicial notice of the following:

> [T]he CCAP minutes prepared by the clerk from the conclusion of the trial said that we adjourned at approximately 4:30, reconvened at approximately 4:56 and then adjourned in finality at approximately 5:00 p.m.  So there was only approximately according to that four or five minutes when we were on the record where the door was locked.  During that time the Court came back from deliberations, stated that it had reviewed its notes from the trial, reviewed the applicable jury instructions, announced the verdicts on all 26 counts, revoked bond, and ordered a PSI.

The court then, "out of an abundance of caution," reannounced its verdicts in open court and denied Bessert's motion for a new trial.  Bessert now appeals.

## DISCUSSION

¶18    On appeal, Bessert presents two arguments for our review.  First, he claims that the circuit court's decision to allow Alex to testify using CCTV violated his right to confront the witnesses against him.  Second, he argues that his right to a public trial was violated when the court deliberated and announced its verdicts when the courthouse doors were locked.  He further disputes that reannouncing the verdicts in open court, as the court did here, was an appropriate remedy.  For the reasons provided below, we reject Bessert's arguments and affirm.

*Right to Confrontation*

¶19    The Confrontation Clause of the Sixth Amendment to the United States Constitution provides:  "In all criminal prosecutions, the accused shall enjoy

the right … to be confronted with the witnesses against him ….”[7]  However, “[t]he right to cross-examination, and thereby confrontation, is not … absolute.”  ***State v. Rhodes***, 2011 WI 73, ¶32, 336 Wis. 2d 64, 799 N.W.2d 850; ***Maryland v. Craig***, 497 U.S. 836, 850 (1990).  “[T]he right to confrontation may be limited where necessary to further an important public policy, so long as there are means to assure the reliability of the witness's testimony.”  ***Rhodes***, 336 Wis. 2d 64, ¶34 (citing ***Craig***, 497 U.S. at 850).

¶20     “Whether an action by the circuit court violated a criminal defendant's right to confront an adverse witness is a question of constitutional fact.”  ***State v. Vogelsberg***, 2006 WI App 228, ¶3, 297 Wis. 2d 519, 724 N.W.2d 649.  We uphold the court's findings of fact unless clearly erroneous, but we independently apply the law to those facts.  ***Id.***

¶21     In this case, Bessert claims to assert an as-applied constitutional challenge to WIS. STAT. § 972.11(2m)(a) on the grounds that it violates his right to

---

[7] This right applies to the states through operation of the Fourteenth Amendment. ***Pointer v. Texas***, 380 U.S. 400, 403 (1965).  Our Wisconsin Constitution also provides confrontation rights: “In all criminal prosecutions the accused shall enjoy the right … to meet the witnesses face to face ….”  WIS. CONST. art. I, § 7.  “Despite the state constitution's more direct guarantee to defendants of the right to ‘meet’ their accusers ‘face to face,’ the Wisconsin Supreme Court has generally interpreted the state and federal rights of confrontation to be coextensive.”  ***State v. Vogelsberg***, 2006 WI App 228, ¶4, 297 Wis. 2d 519, 724 N.W.2d 649 (citing ***State v. Burns***, 112 Wis. 2d 131, 144, 332 N.W.2d 757 (1983)).

confrontation.[8] Our review of Bessert's arguments, however, reveals that his arguments largely assert a facial constitutional challenge to § 972.11(2m)(a).[9] Further, and as the State argues, both of Bessert's constitutional challenges are undeveloped, as he fails, at the very least, to develop our standard of review on either challenge. While we could decline to reach the merits and conclude that Bessert's constitutional claims are underdeveloped, *see* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992), we choose not to do so. As we explain below, all of Bessert's constitutional claims fail, as § 972.11(2m)(a) is consistent with relevant legal precedent and the circuit court engaged in the appropriate fact finding under the statute.

¶22 Bessert's facial constitutional challenge is premised on his belief that the Confrontation Clause "requires in person, face to face confrontation." Citing

---

[8] The State argues that Bessert forfeited his as-applied constitutional challenge by failing to raise it in the circuit court. *See* **State v. Cole**, 2003 WI 112, ¶46, 264 Wis. 2d 520, 665 N.W.2d 328 (stating that an as-applied constitutional challenge may be waived or forfeited). As the State notes, defense counsel argued at the hearing on Bessert's motion that "everyone says and everyone agrees [WIS. STAT. § 972.11(2m)] has survived constitutional muster." Bessert disagrees with the State's position, arguing that his counsel's statement was "not a repudiation of [defense] counsel's earlier [Confrontation Clause] argument, which had been acknowledged by the court, but rather a pivot, shifting from an argument which had been lost, to an argument which could still be won."

We need not decide this question, as we have the authority to disregard forfeiture arguments and address an allegedly forfeited claim on the merits. *See* **State v. Erickson**, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and ... appellate courts have authority to ignore the [forfeiture].").

[9] Under a facial constitutional challenge, "the challenger must show that the law cannot be enforced 'under any circumstances.'" **State v. Wood**, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63 (citation omitted). "If a challenger succeeds in a facial attack on a law, the law is void 'from its beginning to the end.'" *Id.* (citation omitted). Under an as-applied challenge, we consider "the facts of the particular case in front of us" to determine whether a defendant's "constitutional rights were actually violated. If a challenger successfully shows that such a violation occurred, the operation of the law is void as to the party asserting the claim." *Id.* (citation omitted).

10

*Crawford v. Washington*, 541 U.S. 36 (2004), and *Giles v. California*, 554 U.S. 353 (2008), Bessert claims that there are only three exceptions to the Confrontation Clause requirement: "(1) a dying declaration; (2) when the defendant engages in some course of conduct designed to prevent a witness from testifying; and (3) a prior examination if the witness were demonstrably unavailable and the defendant had the opportunity to cross-examine the witness[] [at] the time of the examination." According to Bessert, none of these exceptions apply and WIS. STAT. § 972.11(2m) does not meet the criteria for an exception to the Confrontation Clause guarantee; thus, he appears to claim that the statute is unconstitutional under any circumstances.

¶23 Whether the Confrontation Clause allows for modifications to the traditional face-to-face courtroom testimony at a criminal trial is not a novel question in our constitutional jurisprudence. In fact, in *Craig*, the United States Supreme Court addressed the same question presented here: "whether the Confrontation Clause of the Sixth Amendment categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." *Craig*, 497 U.S. at 840. There, the State relied on a Maryland statute allowing for testimony of a child victim by CCTV. *Id.* at 840-42. The Supreme Court acknowledged that in *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988), the Court had previously stated that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Craig*, 497 U.S. at 844. The *Craig* Court clarified that "[w]e have never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* It noted that the

11

decision in *Coy* "le[ft] for another day" the question of whether any exceptions exist. *Craig*, 497 U.S. at 844 (citing *Coy*, 487 U.S. at 1021).

¶24 The Court in *Craig* ultimately concluded that a child could testify through CCTV where the circuit court makes the following three case-specific findings: (1) that the "procedure is necessary to protect the welfare of the particular child witness who seeks to testify"; (2) "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant"; and (3) "that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* at 855-56 (citation omitted). "So long as a [circuit] court makes such a case-specific finding of necessity, the Confrontation Clause does not prohibit a State from using a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case." *Id.* at 860.

¶25 Bessert argues, however, that *Craig* was "incorrectly decided" and that subsequent Supreme Court case law indicates that the decision has been overruled. According to Bessert, *Craig* "[a]rguably … created a fourth exemption to the confrontation clause," the case "was highly questionable when it was decided over vigorous dissent, and subsequent Supreme Court case law clearly indicates it is no longer 'good law.'" Bessert observes that at the time *Craig* was decided, the leading Confrontation Clause case was *Ohio v. Roberts*, 448 U.S. 56 (1980), and *Craig*'s holding substantially relied on *Roberts*. *Roberts* was subsequently overturned by *Crawford*, and by doing so, argues Bessert, *Crawford* implicitly overturned *Craig*.

12

¶26 We previously rejected this same argument in *Vogelsberg*. There, a jury convicted the defendant of first-degree sexual assault of his four-year-old grandson. *Vogelsberg*, 297 Wis. 2d 519, ¶2. Prior to trial, the State moved to permit the victim to testify via CCTV. *Id.* The circuit court took testimony and determined that the victim "would likely be further traumatized by having to face his abuser at trial." *Id.* The court then "ordered that the victim be allowed to testify from behind a screen to shield him from visual contact with Vogelsberg." *Id.* On appeal, the defendant's "primary contention [was] that the U.S. Supreme Court's decision in [*Crawford*] represents a shift in confrontation-clause jurisprudence that overturns state and federal precedents permitting a witness to testify from behind a barrier upon a particularized showing of necessity." *Vogelsberg*, 297 Wis. 2d 519, ¶5.

¶27 In response, we reviewed the leading state and federal case law on the subject, ultimately concluding that *Crawford* did not overrule *Craig*. *Vogelsberg*, 297 Wis. 2d 519, ¶¶6-13. We reasoned that "[h]ad the Supreme Court intended to overrule *Craig*, it would have done so explicitly." *Vogelsberg*, 297 Wis. 2d 519, ¶14. Further, we explained that "*Crawford* and *Craig* address distinct confrontation questions": "*Crawford* addresses the question of *when* confrontation is required; *Craig* addresses the question of *what* procedures confrontation requires. The two cases can coexist peacefully, and nothing in *Crawford* suggests that *Craig* is placed in doubt."[10] *Vogelsberg*, 297 Wis. 2d 519, ¶¶15-16 (citation omitted).

---

[10] Since *Vogelsberg* was decided, our supreme court has also positively cited *Maryland v. Craig*, 497 U.S. 836 (1990). *See State v. Rhodes*, 2011 WI 73, ¶¶34-36, 336 Wis. 2d 64, 799 N.W.2d 850.

¶28    The defendant in *Vogelsberg* did not argue that the circuit court had failed to make the three findings required by *Craig*, and we did not address WIS. STAT. § 972.11(2m)(a) or determine whether the statute comported with the three findings required by *Craig*.  *See Vogelsberg*, 297 Wis. 2d 519, ¶20.  Nevertheless, we concluded, based on our review of the record, that the court's "use of a barrier between Vogelsberg and the child witness was appropriate and did not violate Vogelsberg's confrontation right." *Id.*

¶29    Bessert claims that *Vogelsberg* was also wrongly decided.  However, we are bound by this court's conclusion in *Vogelsberg* that *Craig* is still good law. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court … has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").  Contrary to Bessert's argument in his reply brief suggesting that our supreme court also wrongly decided *Cook*, we cannot, as an error correcting court, correct our own purported errors.  *See id.*  At the heart of all of Bessert's arguments is the premise that the courts have decided these Sixth Amendment issues incorrectly.  We have no authority, however, to determine that the relevant decisions by the United States Supreme Court, the Wisconsin Supreme Court, and this court were incorrect.

¶30    Under the applicable case law, "the right to cross-examination is not absolute, [and] the right to confrontation may be limited where necessary to further an important public policy, so long as there are means to assure the reliability of the witness's testimony."[11]  *Rhodes*, 336 Wis. 2d 64, ¶34 (citing

---

[11] Given this conclusion, we will not further address Bessert's contentions that the Confrontation Clause requires in person, face-to-face confrontation and that WIS. STAT. § 972.11(2m) does not meet the criteria for any of the three exceptions to his Confrontation Clause rights.  *See supra* ¶22.

(continued)

*Craig*, 497 U.S. at 850). The "protection of the 'physical and psychological well-being' of children" represents one such important public policy. *Id.*, ¶35 (citation omitted). We therefore reject Bessert's facial constitutional challenge to WIS. STAT. § 972.11(2m). The only remaining question, then, is whether the circuit court's use of § 972.11(2m) in this case violated Bessert's rights.

¶31 As to Bessert's as-applied constitutional challenge, he argues that the evidence before the circuit court was insufficient to support the court's findings under WIS. STAT. § 972.11(2m). We note that while Bessert argues that *Craig* is not good law, he does not claim that § 972.11(2m) fails to comply with *Craig*'s requirements. *See Craig*, 497 U.S. at 855-56, 860. Consistent with those requirements, § 972.11(2m)(a) authorizes the court to take a child witness's testimony via CCTV after making case-specific findings. As pertinent to this appeal, where a child is under the age of twelve, the court must make two findings:

---

Bessert also argues that the circuit court's finding that Alex "would suffer serious emotional distress violates the presumption [that] every defendant is presumed innocent until proven guilty." As the State observes, this argument appears to be a different as-applied constitutional argument. Nevertheless, we reject Bessert's arguments on this point as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

     a. That the presence of the defendant during the taking of the child's testimony will result in the child suffering serious emotional distress such that the child cannot reasonably communicate.

     b. That taking the testimony of the child in a room other than the courtroom and simultaneously televising the testimony in the courtroom by means of closed-circuit audiovisual equipment is necessary to minimize the trauma to the child of testifying in the courtroom setting and to provide a setting more amenable to securing the child witness's uninhibited, truthful testimony.

Sec. 972.11(2m)(a)1.a.-b.

¶32 We conclude the circuit court made the appropriate findings of fact under WIS. STAT. § 972.11(2m)(a) and properly allowed Alex to testify by CCTV. Bessert concedes on appeal that "the circuit court made a meticulous record," but he argues that "there is nothing in the record which supports the finding [that Alex] would not be able to communicate." We disagree. The evidence presented by Alex's guardian demonstrated that she was "scared," and her fear had manifested into "real bad" nightmares. Those nightmares involved Bessert regaining custody of Alex and Bessert killing her guardian by "slicing [her] throat." Further, during the period where Alex was participating in trial preparation—which consisted of fun activities to develop a familiarity with the assistant district attorneys—she developed problems that included wetting the bed, and she had angry outbursts toward other children. Her guardian made it clear that Alex was scared of the entire trial process, and Bessert specifically, and that she did not want to see Bessert again. Further, due to Alex's counselor being on maternity leave, Alex had no plan or support system to help her cope with this trauma, the stress of testifying, and her fear of seeing Bessert.

¶33 Based on this evidence, the circuit court found that (1) "forcing [Alex] to testify in the presence of [Bessert], her alleged sexual abuser on multiple

occasions, will result in her suffering serious emotional distress" such that "she could not reasonably communicate effectively in this courtroom during the trial," and (2) "video testimony … is necessary to minimize the trauma to [Alex] and to provide a setting that is more amenable to securing [Alex's] uninhibited and truthful testimony." On this record, the court's findings are not clearly erroneous. Thus, the court properly allowed the State to present Alex's testimony via CCTV, and there was no Confrontation Clause violation.[12] *See* WIS. STAT. § 972.11(2m)(a)1.a.-b.; *Craig*, 497 U.S. at 850.

*Right to a Public Trial*

¶34    Bessert's final argument is that when the courthouse locked its doors prior to the circuit court reading its verdicts, his constitutional right to a public trial was violated, and, accordingly, he is entitled to a new trial. The State disagrees, arguing that to the extent Bessert's public trial right was actually violated, the court appropriately remedied the violation. Assuming without deciding that a violation of constitutional proportions occurred, we agree with the State that the court properly remedied the violation.

---

[12] We also note that Bessert's convictions were for the counts related to his actions when Alex was an infant, as testified to by his former girlfriend. Bessert was acquitted on the charges for which Alex provided testimony. We do not, however, address the confrontation issue under the harmless error rubric, as we were not convinced that the State proved beyond a reasonable doubt that the use of Alex's testimony via CCTV did not affect the circuit court's verdict on the charges for which Bessert was found guilty.

17

¶35 Defendants have a constitutional right to a public trial under the Sixth Amendment to the United States Constitution.[13] *State v. Vanness*, 2007 WI App 195, ¶7, 304 Wis. 2d 692, 738 N.W.2d 154.

> The Supreme Court has described four values furthered by the Sixth Amendment guarantee of a public trial: "(1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury."

*State v. Ndina*, 2009 WI 21, ¶49, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted).

¶36 The right to a public trial, however, is also not absolute. *Id.*, ¶44. To determine whether a defendant's right to a public trial has been violated, we engage in a two-step analysis. *Id.*, ¶46. First, we "determine[] whether the closure at issue implicates the Sixth Amendment right to a public trial." *Id.* We need go no further if the first step fails. *Id.* If the right to a public trial is implicated, then we "must determine whether the closure was justified under the circumstances of the case." *Id.*

> Closure of a criminal trial is justified when four conditions are met: "(1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure."

---

[13] This right is also applicable to the states through the Fourteenth Amendment. *State v. Vanness*, 2007 WI App 195, ¶7, 304 Wis. 2d 692, 738 N.W.2d 154.

*Id.*, ¶56 (quoting *Vanness*, 304 Wis. 2d 692, ¶9 n.3); *see also* ***Waller v. Georgia***, 467 U.S. 39, 44, 46 (1984). However, even where an unjustified closure has occurred, where the "closure is trivial, there is also no constitutional violation." *Vanness*, 304 Wis. 2d 692, ¶9. "In short, the triviality inquiry goes principally to the length of the closure and what parts of the trial were closed." *Id.*, ¶12. We review whether a defendant's Sixth Amendment right to a public trial has been violated as a question of constitutional fact, upholding the circuit court's findings of fact unless clearly erroneous but applying constitutional principles to those facts independently. *Ndina*, 315 Wis. 2d 653, ¶45.

¶37 In this case, it is undisputed that the courthouse doors were locked and closed to the public during the four or five minutes it took for the circuit court to issue its verdicts. The closure of the building during a trial was accidental; thus, the court made no findings to justify the closure of the criminal trial. *See id.*, ¶56. Further, the Second Circuit Court of Appeals has held that "closing the court to announce the verdict was not a trivial violation because the verdict is the focal point of a criminal trial." *Vanness*, 304 Wis. 2d 692, ¶12 (citing ***United States v. Canady***, 126 F.3d 352, 364 (2d Cir. 1997)).

¶38 We acknowledge the State's argument that the court closure here may have been a trivial violation. The State asserts that "[u]nlike in ***Canady***, where there was *no* proceeding covering the announcement of the verdict, *see* ***Canady***, 126 F.3d at 363-64, here the court announced its verdicts during a trial with 'numerous people' in the gallery." The State argues that "[t]his appears to be a significant distinction when considering the four core values that the public trial right advances and given some of our supreme court's statements on the topic." *See* ***State v. Pinno***, 2014 WI 74, ¶¶42, 44, 356 Wis. 2d 106, 850 N.W.2d 207.

¶39     Nevertheless, recognizing our mandate to decide cases on the narrowest possible grounds, *see* ***State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989), the State suggests that we should assume that the courtroom closure here was not trivial.  We agree.  Therefore, we assume without deciding that Bessert's right to a public trial was violated and that the violation was not trivial.

¶40     The remaining question is whether the remedy used by the circuit court—reannouncing its verdicts in open court—was sufficient to remedy the constitutional violation.  The State argues in the affirmative, noting that by reannouncing its verdicts in open court, the court heeded our supreme court's instruction in ***Pinno***.  There, the court observed that "even in the event of an improper courtroom closure, courts must carefully fashion a remedy to avoid granting a 'windfall' to an opportunistic defendant." ***Pinno***, 356 Wis. 2d 106, ¶46.  The ***Pinno*** court relied on the Supreme Court's discussion in ***Waller***, where the public was excluded from a seven-day suppression hearing.  ***Waller***, 467 U.S. at 41-43.  As the remedy for the constitutional violation, the Court ordered a new suppression hearing, rather than a new trial.  ***Id.*** at 50.  According to the Court, "the remedy should be appropriate to the violation.  If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest." ***Id.***

¶41     ***Canady*** is also instructive.  There, after a bench trial, the district court mailed its decision and order convicting the defendant of the crimes rather than announcing its decision in open court. ***Canady***, 126 F.3d at 355.  The Second Circuit held that the court's failure to announce the verdict in open court was not a trivial violation, but it determined that the appropriate remedy was to "remand to the district court to announce its decision in open court." ***Id.*** at 364.  Despite

acknowledging that "*Canady* is factually similar to [his] case," Bessert claims that "[t]he *Canady* [c]ourt's hollow remedy contrasts sharply with the lofty language the court used in describing the right to a public trial" and that he is entitled to a new trial. We disagree.

¶42 We conclude that the circuit court's remedy of reannouncing its verdicts in open court was sufficient to advance the core values furthered by the Sixth Amendment guarantee of a public trial. As an initial matter, we note that neither party has identified the standard by which we are to review the court's choice of remedy for a violation of a defendant's right to a public trial. Whether a violation of the right occurred is, as noted above, a question of constitutional fact, but the standard of review by which we consider the remedy provided by the court is less clear. The State explained that it "has not identified a binding case that establishes the standard by which this [c]ourt reviews a circuit court's remedy for a public-trial-right violation." We concur.

¶43 The State then argues that "[b]ecause courts are charged with fashioning a remedy that is 'appropriate' to the violation, *see Pinno*, 356 Wis. 2d 106, ¶46," this court "should review the circuit court's decision for an erroneous exercise of discretion." Bessert did not respond to the State's assertion in his reply brief. We conclude, however, that regardless of whether we review the circuit court's decision de novo or for an erroneous exercise of discretion, the court fashioned an appropriate remedy.

¶44 In this case, the closure was accidental and not caused by the State or the circuit court; it occurred for approximately twenty-five minutes while the court was deliberating and not in session and for only four or five minutes during the reading of the verdicts; and members of the public were still present in the

courtroom during that time, despite the courthouse doors being locked. Under these circumstances, we determine that granting Bessert a new trial would not be an appropriate remedy and would provide a windfall to him. The same values advanced by a public reading of the verdicts at the conclusion of the trial were accomplished by reannouncing the verdicts in open court at the subsequent motion hearing before sentencing. Bessert does not dispute this point. He merely stands on his right to a public trial, arguing that "secret proceedings will lead to a corrupt, indolent and arbitrary judicial system." Bessert, however, fails to identify any evidence that those concerns are present here. We therefore agree with the State that, even assuming a violation of Bessert's right to a public trial occurred, the court appropriately remedied that violation, and Bessert is not entitled to a new trial.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.